# CASES

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1922.

---

## Mary Emmert, Appellee, v. Boyd P. Hill and J. Manley Clark, Appellants.

### Gen. No. 7,031.

1.  DOWER—*renunciation in equity of husband's testamentary provisions for insane wife.* In a proceeding in equity to require the conservator of an insane widow to renounce the provisions of her husband's will for her and to elect to take under the statute, the court will look solely to the widow's best interests, and the fact that she will obtain twice as much in money value under the statute as under the will is not determinative and it is immaterial that the will provides amply for all her necessities and comforts, that she has ample means of her own, that her husband's testamentary scheme will be defeated by renunciation, that, subject to the executors' discretion, the whole estate may be used for her benefit in case of necessity, or that the interest of her next of kin, as natural claimants on her bounty, would probably impel her, if sane, to renounce, although all such matters may be considered by the court.

2.  DOWER—*widow's will as evidence of her intention to renounce provisions of her husband's will.* In a proceeding in equity to require the conservator of an incurably insane widow to renounce the provisions of her husband's will for her, an instrument purporting to be her will, executed prior to her insanity and bequeathing the bulk of her estate to the husband but providing that, in case of his death before hers, her estate should be distributed pursuant to the terms and provisions of his will, is admissible as

(1)

evidence of a circumstance to be considered by the court, but it does not establish a definite arrangement between the parties for a joint testamentary scheme which would impel her, if sane, to accept the provisions of his will rather than defeat such scheme, especially where it is not shown that she had any knowledge of the provisions of his will, it having been executed three years after hers.

3. DOWER—*when equity will require renunciation of husband's testamentary provisions for insane wife.* The conservator of an insane widow will be required to renounce the provisions of her husband's will for her, notwithstanding they are ample for her necessities and comforts, that she is aged and incurably insane, that renunciation may defeat his testamentary scheme in which she may have concurred, or that in case of necessity his entire estate may be used for her benefit, where the estate is large and was acquired with her aid and she will obtain more than twice as much in money value under the statute as under the will and all the facts and circumstances indicate that her best interests will be subserved by renunciation.

4. COSTS—*of suit to require conservator to renounce husband's testamentary provisions for wife as charge against husband's estate.* In a proceeding in equity by the next friend of an insane widow to require her conservator to renounce for her her husband's testamentary provisions for her and to elect to take under the statute, the complainant's solicitors' fees and his necessary expenses should be charged against the husband's estate and not against the widow, the litigation having necessarily resulted from the provisions of the will and the widow's mental condition which made resort to chancery necessary to preserve her rights.

Appeal from the Circuit Court of Stephenson county; the Hon. HARRY EDWARDS, Judge, presiding. Heard in this court at the October term, 1921. Affirmed in part and reversed and remanded with directions in part. Opinion filed August 5, 1922. *Certiorari* denied by Supreme Court (making opinion final).

ROBERT P. ECKERT, ROBERT B. MITCHELL and A. J. CLARITY, for appellants.

DOUGLAS PATTISON, R. R. TIFFANY and L. H. BURRELL, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

This is an appeal from a decree of the circuit court

Emmert v. Hill et al., 226 Ill. App. 1.

of Stephenson county directing J. Manley Clark, conservator of the appellee, Mary Emmert, to file in the office of the county clerk of said county a written renunciation of the benefits of all devises or other provisions in her favor contained in the last will and testament of her deceased husband, Joseph Emmert, and allowing appellee solicitors' fees. It is conceded by appellants that a court of equity has the power, in a proper case, to renounce the provisions of a will made by a husband in favor of his insane widow. The real question in dispute is whether or not in the present case a renunciation of the provisions of the will in favor of the widow, who is insane, is for her best interests.

The important facts in the case are as follows: Joseph and Mary Emmert lived together as husband and wife in Freeport, Illinois, for more than fifty years when Joseph died at the age of eighty-eight years. His widow was about one year younger. He had accumulated property worth approximately $228,000. Mary had a separate estate worth approximately $26,000. There were no children left surviving. Several children had been born to them but they had died in infancy. The nearest relatives were nephews and nieces. Joseph Emmert died November 29, 1920, leaving a last will and testament and codicil thereto. The original will bears date March 2, 1917, and the codicil bears date May 14, 1919. Under the terms of such will and codicil the appellee, Mary Emmert, was bequeathed the sum of $10,000 and all household furniture and chattels used by them in and about their residence and barn. He also bequeathed to her for her natural life all the rest and residue of his property remaining after the payment of certain specific legacies. The will further provides that if in the judgment of the executors the rents, issues, profits and income from said property shall not be sufficient for her support and maintenance, they may

resort to the principal of said estate for such sum or sums from time to time as in their judgment shall be necessary for her proper support and maintenance. General powers are given to the trustees named in the will to manage said property and to convey, invest and reinvest it. The *corpus* of the estate remaining after the death of the widow is devised and bequeathed to the Home for the Aged of Freeport, Illinois, upon certain conditions named in the will. In the event such conditions are not fulfilled other disposition of the property is provided. The will also provides that any and all property which may belong to the said Mary Emmert, at the time of her death and which she may by will or codicil direct, shall be disposed of or distributed pursuant to or in accordance with the provisions of his said will. The appellants, Boyd P. Hill and J. Manley Clark, are named as executors and trustees.

The said will and codicil were admitted to probate January 6, 1921, and letters testamentary were thereupon issued to said Hill and Clark.

About two years prior to the death of her husband, Mary Emmert was stricken with paralysis and soon thereafter became almost helpless in mind and body. She has been confined to her bed for many months and according to the evidence has a mind of a five-year-old child, being mentally and physically incapable of transacting any business. The testimony of her physician shows that her condition is permanent and progressive. On December 28, 1920, the said J. Manley Clark was appointed conservator for her. James A. Cochran, a nephew and the nearest of kin to the said Mary Emmert, made a demand upon the said conservator on January 19, 1921, to file on behalf of the said widow a bill in chancery to renounce the provisions of said will and codicil and to elect to take under the statute for her. The conservator refused to comply with such demand, whereupon the

said Cochran, as next friend of the said widow, filed the bill herein to which answers were filed. Afterwards on April 4, 1921, the said Cochran by his solicitor filed a petition herein, praying that the said Cochran as next friend be authorized and empowered to employ the solicitors who are the attorneys of record here for appellee and that the expenses and fees of said solicitors be fixed and taxed as costs.

Many cases have been cited by counsel for the purpose of establishing definite rules or tests to be applied when the aid of a court of equity is sought to make a renunciation and election on behalf of an insane widow. We have carefully studied these cases and we conclude that in determining whether or not it is to the best interest of a widow to renounce a will, no hard and fast rule can be laid down. Whether or not her interests will be best subserved by a renunciation must be determined from all the facts and circumstances in the particular case. A test which is valuable in one case might lead to a ridiculous result in another case. So then we must inquire as to the situation in which appellee is placed by reason of the provisions of her husband's last will and whether it is to her advantage to take under it or to renounce it and take under the statute. We can only look to her best interests. We cannot concern ourselves about other individuals or corporations. It is impossible for us to know what she would do if she were sane. Neither can we tell what she would probably do under such circumstances except that we may judge what any rational person would be apt to do under like circumstances. To go further than that would be mere speculation.

It appears from the evidence that on July 8, 1914, she executed a will and that by its terms she bequeathed the bulk of her estate to her husband but provided that, in the event of the death of her husband prior to her death, then her estate should be

distributed pursuant to the terms and provisions of his last will as effectually as though her property had belonged to him at the time of his death.

The expectancy of Mrs. Emmert is about four years. It is stipulated that the net income of the estate of Joseph Emmert is approximately $10,000 per annum. The household furniture and chattels in connection with the barn are estimated to be of the value of $1,000. Therefore if she shall die at the end of her expectant term she will have received by reason of the bequest made to her $10,000 in cash, $1,000 in household goods, etc., and an income of $40,000, making a total of $51,000.

Our attention has not been called to any testimony showing what, if any, indebtedness there is against the estate, but it is apparent that the widow would get not less than $100,000 in case the provisions of the will in her behalf are renounced. The income on one-half of the estate would be $5,000 per annum or $20,000 for four years. Thus she would receive a total of $120,000 or $69,000 more than she would receive if the provisions of the will concerning her be not renounced.

It is insisted by appellee that this difference is so large that it would be a fraud upon the widow to deprive her of it by giving it to her husband's estate and our attention is called to *Lessley v. Lessley,* 44 Ill. 530, wherein the Supreme Court of this State said that: "This right of election proceeds upon the ground that the wife has an interest in the estate of the husband of which he cannot deprive her by will or otherwise, without her consent. And when he attempts to do so she has the right to elect whether she will take the provisions made for her by the will or renounce them and hold such rights in his estate as the law gives to her." It is undoubtedly the law in this State that what a widow is entitled to out of the estate of her deceased husband is not by way

of bounty like other general bequests. If she takes
under the will she does so at the penalty of relinquish-
ing what she is entitled to under the statute. In other
words, the provisions for her contained in the will
are but an offer of her husband to purchase her statu-
tory rights at a price fixed by his bequests to her.
No matter what may be the view taken by courts of
other jurisdictions upon this question, the law here
announced is settled in this State. (*Carper v. Crowl,*
149 Ill. 465; *Bell v. Nye,* 255 Ill. 287; *Blatchford v.
Newberry,* 99 Ill. 11; *Lewis v. Sedgwick,* 223 Ill. 220.)

We are not inclined to hold that in every case where
an insane widow will obtain more in money value by
a renunciation than she would get under the terms of
the will, her best interest will be subserved by a re-
nunciation. However, we must assert that if the
difference is great, it constitutes a circumstance which
we cannot ignore in determining what is to her ad-
vantage. Such a consideration responds to the rule
of reason, for it is seldom that a widow ever re-
nounces a will unless she is of the opinion that, by
doing so, she is obtaining more of money value and
that her conduct is therefore to her best interest.

On the other hand, it is insisted that the necessities
and comforts of the widow have been abundantly
provided for; that there was a definite arrangement
or understanding between Joseph Emmert and his
wife as to the ultimate disposition of their joint prop-
erty; that this understanding is disclosed by the con-
text of their respective wills; that the court should
consider her probable desire to carry out such under-
standing and the beneficent objects of the will; and
that the effect of a renunciation would be to disturb
and in part defeat such arrangement. Counsel for
appellants rely largely in support of their contention
upon *Van Steenwyck v. Washburn,* 59 Wis. 483; *State
ex rel. Percy v. Hunt,* 88 Minn. 402; *In re Connor's
Estate,* 254 Mo. 65, 162 S. W. 252. In the *Washburn*

case the widow had been hopelessly insane for more than twenty-five years. Her husband, Governor Washburn, by his will had set aside $5,000 a year to be expended for her support during her life. Had she renounced the will she would have obtained between $600,000 and $700,000 as her share of the estate. The court in that case said: "Presumably she is incurably and hopelessly insane. * *. * She can have no conception of the value or use of money. 'If the wealth of Ormus and of Ind' were laid at her feet she would not distinguish it from the dust. She cannot use money. She cannot manage it. Its possession would be of no earthly benefit or advantage to her. Provision is made in the will for all her wants and necessities, for medical care and attention, and all other care; in short, for everything which will promote her comfort and physical health. Does not this meet the demands of every equitable requirement, so far as Mrs. Washburn is concerned? So, cannot the court pay some regard to the benevolent intentions of the testator towards his kindred by blood, and those having claims on his bounty; to his munificent bequests for admirable and noble public charities? * * * It is evident if the court should elect what the law gives the widow in case of intestacy that the intentions of the testator will in a measure be defeated. Such an election would greatly interfere with the scheme of the will. * * * The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy." The reasoning of the other cases above cited is much the same as in the *Washburn* case and the tests applied are also much the same. But are they the proper tests? In the first place, it seems to us that a court of equity in dealing with the widow's best interests is no more concerned about whether or not the scheme of the testator's will is carried out than it is by whether or

not the widow's next of kin would profit by a renunciation. Neither are proper subjects for the court's consideration in a case like this. Under the law of Illinois a widow has a fixed legal right in her deceased husband's estate. This cannot be taken away from her without her consent. If the widow be sane and she elects to renounce, the laws of Illinois are not concerned whether her renunciation results in defeating the scheme of her husband's will or not. No matter how kindly disposed the courts may be towards the beneficent bequests contained in a will, the plain duty of a chancellor in such a case is to see that the widow's best interests are protected regardless of the interests of any other person or institution whatsoever and without concern as to whether or not the general scheme and plan of the testator's will is interfered with. Again, we are constrained to disagree with the *Washburn* case in its holding that the testator has a sacred right to dispose of his estate in accordance with his own wishes and that a court of equity will not disregard or destroy such right. The right which a husband has to dispose of his property by will is only a legal one and it is subject to the paramount rights of his widow in his estate. As we have heretofore observed, he cannot disinherit her. Neither can he reduce the quantum of her interest in his estate except with her consent. The statute gives her twelve months after the probate of the will in which time she may determine what is to her best advantage in the premises. If she concludes that she would be better off to abide by the provisions of the will, she need take no formal action. Her silence gives consent. But if she is dissatisfied with the provisions of the will concerning her she may, by filing her declaration in the probate court, renounce the provisions made for her and take under the statute.

Moreover, it is possible that by meeting "the demands of every equitable requirement" of a widow,

a husband may discharge himself from the duty to give to her that share of his estate she is entitled to under the law? Is it possible that a husband with an afflicted wife can be thus enabled to dispose of his property by will in a manner he could not do if his widow were sane? Are his estate and beneficiaries to have an advantage because of an insane widow? Upon what equitable theory should she be deprived of her right to obtain her share in the estate simply because she is insane? Upon what reason can it be said that equitable considerations will allow a husband to do less for his wife and more for charity when she is insane than he could do if she were sane?

In determining what is for the best interests of an insane widow are we limited to ascertain whether or not she has been amply supplied with both necessities and personal comforts? If this is the test, then under the circumstances in this case Mrs. Emmert needed nothing from the estate of her deceased husband for she has ample means of her own to provide for her necessities and comforts during her few remaining years. To apply the tests laid down in either the *Washburn* case or the *Connor* case is but to penalize a widow for being insane.

Appellee insists that the chancellor erred in admitting in evidence the instrument purporting to be the last will and testament of Mary Emmert. We think there was no error in the chancellor's ruling. The document gives evidence of a circumstance which with other matters in evidence ought to be considered by the court. However, we cannot hold that it has the probative force claimed for it by appellants. A will is always ambulatory and had Mrs. Emmert remained sane she could have revoked it or modified it at any time she saw fit. It is a matter of common knowledge in the legal profession that wills are very frequently modified when a change occurs in a family by death

or otherwise. But, more than that, her will was drawn in 1914. Her husband's will was not drawn until 1917. There is nothing whatever in the record indicating that either she or her husband had any notion in 1914 of an intention on his part to make any of the charitable bequests contained in his will. And it cannot be presumed that she knew of any such intention if one existed. But if such an intention could be presumed it would not carry with it a further presumption that she should not receive the portion of his estate to which she would be legally entitled upon his death.

While in determining the best interests of the widow it is improper for us to consider the interests of her next friend and next of kin, still, it is not improper for us to consider anything which would probably be in the mind of any rational person when dealing with matters concerning his or her estate. Every sane person considers the natural objects of his bounty. He gives more or less thought to the accumulation and acquisition of property; to the affluence which comes from wealth; to the claims his next of kin may have upon his bounty; to a just and proper distribution of his estate upon his death. Therefore, all these things must be considered by a court in determining the best interests of an insane ward even though her actual physical wants may have been provided for. Any consideration which might move a sane widow to act ought to be a consideration which would impel a court to act for her if she be insane. Hence, if a natural impulse of a sane person is to consider her next of kin and to desire increased estate which would remove necessity from among the possibilities; which would cause those to whom her care is intrusted to exercise greater diligence and tenderness in their ministrations upon her, then a court cannot disregard such considerations.

It is urged that Joseph Emmert's will provides

that in the event of necessity therefor his whole estate may be used for the care and support of his widow, but the existence or nonexistence of such necessity is left to the judgment of his executors. She should not be compelled to look to them for charity when she has a clear legal right to a large part of her husband's estate which may be applied to her use and benefit when necessary, without the intervention of the executors of her husband's will. It is to be remembered that the husband's large estate was accumulated after his marriage and the circumstances indicate that Mrs. Emmert did her full share to aid him.

All things considered, it is quite evident to us that the chancellor correctly found that the best interests of the widow require that the provisions made for her in the last will of her husband should be renounced and that an election be made to take for her that interest in her husband's estate to which she is entitled under the statute.

The chancellor allowed complainant's solicitors' fees in the sum of $9,000 and ordered the same to be taxed against Mary Emmert as a part of the costs of this proceeding, and he also ordered the sum of $195 to be taxed against her for necessary expenses of James Cochran as her next friend in these proceedings. The appellee has assigned cross error as to such order. Without question, this litigation is the result of the provisions of the last will of Joseph Emmert, deceased. He was undoubtedly aware of the mental condition of his wife. He must be presumed to have known that the bequests made to her were by way of an offer to purchase her interest in his estate; that such offer might not be accepted; that the only method by which a refusal to accept such offer could be made effective would be by a suit in chancery. It therefore logically follows that the costs of this proceeding should be taxed against his

estate.   We believe the matter of the allowance of solicitors' fees was properly presented to the court by petition of appellee.

The decree of the chancellor is affirmed in all respects except as to the order directing the said solicitors' fees and expense money to be taxed as costs against Mary Emmert.   As to such order the decree is reversed and remanded with directions to the chancellor to modify said decree in respect to said sums and to order that they be taxed against the estate of Joseph Emmert, deceased, to be paid in due course of the administration of said estate.   Affirmed in part and reversed and remanded with directions as to part. *Affirmed in part and reversed and remanded with directions in part.*