**MORTON, ESTATE OF, In Re**

Ohio Probate Court, Franklin Co

No 75546.  Decided June 16, 1936

Francis J. Wright, Columbus, for Flora S. Morton.

Robt. H. Hoffman, Columbus, for applicant.

440

## OPINION

By McCLELLAND, J.

Owing to the situation as hereinbefore stated, the guardian has filed the application above referred to and it now becomes the duty of the court to make the election for the incompetent spouse as provided by §§10504-63-64 GC, which sections are in words as follows:

### Sec 10504-63 GC.

"When because of unsound mind, or other legal disability, the surviving spouse is unable to make an election, as soon as the facts come to the knowledge of the Probate Court, at any time within the time allowed by law for election, it shall appoint some suitable person to ascertain the value of the provision made for such spouse in lieu of the provisions made by law, and the value of the rights by law in the estate of the deceased consort."

### Sec 10504-64 GC.

"On the return of the report of the person appointed to make such investigation, the court shall determine whether the provision made by the testator for the surviving spouse, in the will, or the provision by law, is better for such spouse, and shall elect accordingly. It shall thereupon record upon its journal the election for such spouse under disability, by virtue of the proceeding herein provided, which election, when so entered, shall have the same force and effect as an election made by one not under such disability."

The will of the decedent contains the following language:

"ITEM 3. Having already made provision for the care, support and comfort of my wife, Flora Searls Morton, I give, devise and bequeath in fee simple to my daughter, Helen Morton Brookhouse, all remaining property of whatsoever nature belonging to me at my death."

It is therefore very apparent that the testator has made no provision "in the will" for his surviving spouse. He simply refers to the provision which he had already made for the care, support and comfort of his wife.

The record discloses that while the testator and his wife were living together as husband and wife, and at times more than ten years prior to his death, he had turned over certain moneys and securities to his wife. The record fails to disclose directly that the properties and securities which were turned over to his wife were anything other than gifts.

The first question therefore presented is whether the court in making an election under the two statutes hereinbefore quoted may take into consideration the provision to which the testator has referred as well as the provision "in the will" for the benefit of the surviving spouse. The court cannot change the wording of the statute, nor can the court by construction arbitrarily change the meaning of a statute. We have been unable to find any case in which the courts have so construed the statute to include the provision to which the testator has referred rather than the provision made directly by the will. The legislature evidently intended that the election should be confined to the provision made "in the will" because if it had not so intended, or had it intended otherwise, it would have used an entirely different terminology.

We therefore conclude that the court, following purely the restrictions of the law cannot so construe the statute to include those provisions to which the testator has merely referred.

Another matter has come to the mind of the court and which arises upon the application of Helen M. Brookhouse, which exception was filed in this court on April 10, 1936, and asks that the court elect for the surviving spouse to take under the last will and testament, rather than under the law. This application also contains the allegations that Mr. Morton during his lifetime set aside and transferred the property to his wife in the form of gifts the reasonable value of which is approximately $133,000.00. That said Flora S. Morton has been adjudged an incompetent, and that

the income derived from said property personally given to her by her husband is more than sufficient for everything which will promote her comfort and physical health; that the said Elbert C. Morton knew at the time of the execution of his last will and testament that his wife suffered from an incurable disease, and would be unable to resume her place in society, and that the testator had made a careful investigation of the property which he had previously given to Mrs. Morton, and the income derived therefrom, and had found that the same was ample to provide for her wants and all care necessary to promote her comfort and health. This application also contains the allegations that it was the intention of said Elbert C. Morton at the time he executed his last will that his daughter Helen M. Brookhouse should receive his entire estate, except a bequest in the sum of $1000.00, and that the value of the portion made by law for the surviving spouse would amount to the sum of $49,-156.53, which added to the property already given to her by her husband, would make a total of $182,156.53.

We have referred directly to the allegations of this application for the purpose of showing the amount of the estate of Mr. Morton and also for the purpose of showing his intention. It of course is apparent that it was the intention of Mr. Morton that his widow should have none of his estate left at the time of his death. We have carefully examined not only the application, but the affidavit of Mr. Morton's secretary, which affidavit is submitted as a part of the report of the master appointed by this court. We are unable to discover any evidence of any explicit agreement between Mr. and Mrs. Morton by the terms of which she accepted the gifts and agreed to give up her rights as a surviving spouse.

It is a well known principle of law that when a husband or wife transfers property to a spouse without a consideration, the transfer and delivery constitutes a completed gift. It is apparent that the daughter Helen Brookhouse attempts to plead facts which would work an estoppel against the surviving spouse or any one acting for her. She has however, been extremely careful to plead only the facts, and in doing so has not pleaded such facts as in the opinion of the court, would create an estoppel against any one electing for Mrs. Morton.

A third consideration has come to the mind of the court in this matter, and that is whether or not the gifts amounting to

$133,000.00 might be considered an advance to the surviving spouse. In examining the statute we are however confronted with the direct provision of the statute limiting advancements to children or their descendants. The statute governing advancements is §10503-19 GC, which reads as follows:

### Sec 10503-19 GC

"If any estate, real or personal, has been given by an intestate in his lifetime as an advancement to any child or children of his, or their descendants, it shall be considered a part of the estate of the intestate, so far as it regards the division and distribution thereof among his children or their descendants, and be taken by such child or children or their descendants toward his or her share of the estate."

### ADVANCEMENTS, Ohio Juris., Page 461-464, §3.

"An advancement is simply an anticipation of the distribution which the law would make at the death of the donor * * *

"In order to determine the nature of a transfer of money or property by a parent to his child, it is necessary to ascertain the intention of the parent in making it; in fact, it is just as important to establish the intention of the donor as it is to establish the gift itself, for it is well established that the parent's intention is the controlling principle in the application of the doctrine of advancements. * * *"

It is very apparent from the documents which have been submitted that it was the intention of Mr. Morton when he made these gifts that the same should be used for her care, maintenance, support and comfort for the remainder of her lifetime.

We are confronted, however, with the fact that the person to whom the gifts were made was not the child but a wife. The statute governing advancements was originally enacted when the surviving spouse had only a dower interest in the real estate of the deceased spouse and when she had a smaller distributive share of the personal property. The Probate Code which became effective on January 1, 1932, abolished the vested dower interest in real estate and substituted therefor the exemption of the surviving spouse and also the undivided interest in the real estate and personal property of the deceased consort. Should the surviving spouse of Mr. Morton take under the law she would take one-third of the net estate inasmuch as her husband left a widow and two children surviving

him. The wife therefore, under the statute to which we have just alluded becomes an heir of her deceased husband. The term "heir" usually means that person who would inherit in case one dies intestate. The wife now inherits the same as a child and takes an undivided interest in the entire estate of the deceased consort. We have alluded to this situation in our decision **Re: Estate of Thatcher**, reported in the July 5, 1933, number of **The Ohio Law Bulletin, reported at page 515**. Inasmuch as advancements by the statute are confined to children or their descendants because they are heirs, it seems only reasonable that the legislature should now include a wife as the beneficiary of an advancement. We cannot however, change the law, and advancements therefore must be confined to children until the law is changed to include any other heir.

We must therefore conclude that technically the gifts to a wife are not advancements, although morally and equitably in our opinion the same does constitute an advancement and if possible should be so considered.

We have heretofore concluded that the statute may not be so construed as to include provisions to which the testator has referred to in his will. We have also found that the surviving spouse, or one acting for her, is not technically estopped to elect to take under the law under the circumstances as exist in this case. We have further concluded that under a strict construction of the statute the gifts which were made to Mrs. Morton during the lifetime of her husband were not advancements as defined by the statute.

We now come to the question as to whether or not the court may, under its jurisdiction in equity go beyond the direct provisions of the statute. The statute conferring jurisdiction upon the Probate Court contains the following provision:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

The duties of the Probate Court in the election for an incompetent spouse are particularly defined by the statute, and in our opinion the matter of an election in this case is properly before the court. It is our opinion therefore, that this court has plenary power, not only in law but in equity, fully to dispose of this matter, and we may therefore take into consideration the equities of the situation as well as the requirements of the statute.

We first note the difference between the old and the new statute relative to the duty of the court in making the election for the incompetent spouse. The last statute prior to January 1, 1932, was known as §10575 GC, and reads as follows:

"If, on the return of the report of the person appointed to make such investigation, the court is satisfied that the provision made by the testator for the widow or widower, in the will, is more valuable and better than the provision by law, it shall record upon its minute book an entry that such insane or imbecile widow or widower, by virtue of the proceeding herein provided, elects to take under the will, which election, when so entered, shall have the same force and effect as an election made by one not under such disability."

The statute now in existence, and which is known as §10504-64 GC, and which became effective on January 1, 1932, reads as follows:

"On the return of the report of the person appointed to make such investigation, the court shall determine whether the provision made by the testator for the surviving spouse, in the will, or the provision by law, is better for such spouse, and shall elect accordingly. It shall thereupon record upon its journal the election for such spouse under disability, by virtue of the proceeding herein provided, which election, when so entered, shall have the same force and effect as an election made by one not under such disability."

It is apparent that under the old law the court was bound to make an election, which is more valuable and better, while under the new statute the court shall make an election which is better for the spouse.

The elimination of the provisions relative to the value of the property would seem to indicate that the legislature intended to give the court a broader scope of authority than under the old statute and apparently intended that the court should have a greater jurisdiction in exercising its equity powers than it had under the old statute.

It is our opinion that a court in making an election for the surviving spouse should put itself in the place of a surviving spouse. In doing so the court must assume that the surviving spouse is one who possesses at least ordinary business ability, and in addition thereto should be possessed of the qualities of fairness, loyalty and respect for

the memory and good deeds of the deceased spouse. With these qualifications on the part of a surviving spouse, and with the situation such as we have before us, what should be the election of the surviving spouse? Or what should be the election of the probate judge for and on behalf of the surviving spouse? The surviving spouse during the period of the wedded life of her husband accepted from him the sum of $133,000.00, either in money or in securities. In addition thereto she received the proceeds of $12,000.00 insurance policy at his death. In delivering her this amount of property he intended that this property should be held and used by her for her support and maintenance during the remainder of her life, and also intended that she should have the right to dispose of same either during her lifetime or by her will. It became hers absolutely.

The decedent left an estate of approximately $150,000.00. Would it be equitable or right or just to permit the surviving spouse to hold the $133,000.00, plus the $12,000.00, and still receive $49,000.00 from her husband's estate in view of the fact that the husband intended that she should have none of his estate, after having made the provisions which he has just made? It is our opinion we may take into consideration the equities of this matter and not be bound by the strict provisions of the statute. In justification of our position we refer to a case decided by the Supreme Court of the State of Wisconsin, and which is considered in 74 A.L.R. at page 456. We quote from this report as follows:

"CONSIDERATIONS IN COURT'S DETERMINATION

The factors which enter into the decision of the court in electing for or against taking under the provisions of a will are considered in Van Steenwyck v Washburn, (1884) 59 Wis., 483, 48 Am. Rep. 532, 17 NW 289, probably the leading case on this subject in which the court said: "But upon what principles must the court proceed, or what considerations should be regarded in making that election? The counsel for the respondents insist that the principle upon which an election is made by a court for a person under disability, is to take that property which is most valuable. That may afford a just and proper rule upon which to proceed in most cases. But we think it would not be wise to act upon that principle in the case before us for these reasons: * * * She can have no conception of the value or use of money. If 'the wealth of Ormus and of Ind' were laid at her feet,

she would not distinguish it from the dust. She cannot use money; she cannot manage it; its possession would be of no earthly benefit or advantage to her. Provision is made in the will for all her wants and necessities, for medical care and attendance, for all other care—in short, for everything which will promote her comfort and physical health. Does not this meet the demands of every equitable requirement, so far as Mrs. Washburn is concerned? Further, cannot the court pay some regard to the benevolent intentions of the testator towards his kindred by blood, and those having claims on his bounty; to his munificent bequests for admirable and noble public charities, such as establishing a public library, an orphan asylum for young and destitute orphans, to the fact that he made a will in and by which he disposed of his entire estate in a manner which seemed to him just and right? Is it permissible for the court to consider any of these matters, or must its discretion and judgment be limited to the sole iniquity. Which property is the more valuable? It is evident, if the court should elect what the law gives the widow in case of intestacy, that the intentions of the testator will in a measure be defeated. Such an election would greatly interfere with the scheme of the will. Defeating a will in any substantial provision is much like breaking it. It is defeating it protanto. The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy * * * It seems to us these considerations are entitled to some weight in making the election in this case. If the court can regard them, if it has any discretion in the matter, they should exert their due influence on our judgment. But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion. But we think it is the clear duty of the court to exercise a sound discretion in the matter—to consider everything having a legitimate bearing on the election to be made. Consequently, acting upon that principle, the court, in view of Mrs. Washburn's insane condition, in view of the liberal and ample provision made for her benefit in the will, and in consideration of all the facts, does elect for her that provision as being on the whole the best and most advantageous for her interest and welfare."

So, in First Natl. Bank v MacDonald (1930)—Fla.—,130 S. 596, the court said:

"When made by a court of equity, election is no longer personal and voluntary, but must be predicated on some ground of equity shown to exist in favor of the widow, and of which she is deprived by the will. In determining whether such equity exists, the chancellor will be guided by what is to the best interest of the afflicted widow. In determining what is for the best interest of the afflicted widow, the chancellor will generally be influenced by these considerations: (1) The husband's right to dispose of his estate is limited by the right given the widow to renounce the provisions of the will in her behalf and take under the statute, but the sole reason in law for giving the widow the right to renounce is to insure ample provision for her personal needs and comforts. (2) Her personal needs and comforts may not be confined to pure monetary considerations. (3) The matter of enriching the widow's estate and passing something to her kinspeople has no place in the chancellor's consideration. (4) The kinspeople of the wife have no claim, direct or indirect, on the estate of her husband. (5) The fact that a permanently insane widow knows nothing of the value of money, cannot use it with discretion, and has no need for money or property, save to furnish ample comforts and needs, may be considered. (6) It may also be borne in mind that, when the husband has made ample provision for his insane wife, he has an inherent right to dispose of his property as he pleases, provided the disposition be not contrary to public policy."

Somewhat to the same effect, in a leading English case on this subject, Re: Sefton (1898) 2 Ch (ENG.) 378, C. A. Chitty, L. J. says: "Upon the question whether it would be for the benefit of the lunatic to comply with the conditions contained in his father's will, I have no hesitation in stating my conclusion, which is that it would be for his benefit. I think we ought not in those cases simply to take the narrow view of what is the pecuniary benefit. We should act for the lunatic as if he was a person of sound mind and being a person of sound mind he would be actuated, as a reasonable man with a desire to comply with such a condition as this contained in his father's will.

In Kennedy v Johnston (1870), 65 Pa. 451, 3 Am. Rep. 650, the position is taken that the leaning of the law, in the absence of an election of dower, is towards the will; however, the choice thus presented is one for judicial consideration, and is to be ex-

ercised in view of the circumstances. Such right is also personal, to be exercised by the widow herself, or, if she be incompetent because of unsound mind, by the court which has the care of her estate, unless there be a statutory power committed to the committee.

Likewise, in Re: Brown (1925), 212 App. Div. 677, 209 N. Y. Supp. 288 (affirmed in (1925) 240 N. Y. 646, 148 NE 742) it is held that the power of an equity court to make an election for an insane widow should be exercised only after a careful inquiry as to what is best and most advantageous to the incompetent, which would be subject to review."

There is however a line of decisions which hold entirely contrary to the cases from which we have above quoted. This line of decisions is found in the same report above noted and in order that we may fully understand the reason of the courts whose decisions are referred to, we quote as follows:

"However, there is a vigorous dissent from these tests in Emmert v Hill (1922), 226 Ill. App. 1, where the position is taken that the fact that the insane widow will obtain more in money value by a renunciation than under the terms of the will, while not controlling, where such difference is great, constitutes a circumstance which the court cannot ignore in determining what is to her advantage. In this case a renunciation was ordered notwithstanding the needs of the widow, who was hopelessly insane, where abundantly provided for, and such renunciation may have interfered with a testamentary scheme in which she may have concurred. The court said: "In the first place, it seems to us that a court of equity, in dealing with the widow's best interests, is no more concerned about whether or not the scheme of the testator's will is carried out than it is by whether or not the widow's next of kin would profit by a renunciation. Neither are proper subjects for the court's consideration in a case like this * * * No matter how kindly disposed the courts may be towards the beneficent bequests contained in a will, the plain duty of a chancellor in such a case is to see that the widow's best interests are protected, regardless of the interests of any other person or institution whatsoever, and without concern as to whether or not the general scheme and plan of the testator's will is interfered with. Again, we are constrained to disagree with the

Washburn case (1884), 59 Wis. 483, 48 Am. Rep. 532, 17 NW 289, in its holding that the testator has a sacred right to dispose of his estate in accordance with his own wishes, and that a court of equity will not disregard or destroy such right. The right which a husband has to dispose of his property by will is only a legal one, and it is subject to the paramount rights of his widow in his estate. As we have heretofore observed, he cannot disinherit her. Neither can he reduce the quantum of her interest in his estate except with her consent. * * * Moreover, it is possible that, by meeting 'the demands of every equitable requirement' of a widow, a husband may discharge himself from the duty to give to her that share of his estate she is entitled to under the law. Is it possible that a husband with an afflicted wife can be thus enabled to dispose of his property by will in a manner he could not do if his widow were sane? Are his estate and beneficiaries to have an advantage because of an insane widow?

Upon what equitable theory should she be deprived of her right to obtain her share in the estate simply because she is insane? Upon what reason can it be said that equitable considerations will allow a husband to do less for his wife and more for charity when she is insane than he could do if she were sane? In determining what is for the best interests of an insane widow, are we limited to ascertain whether or not she has been amply supplied with both necessities and personal comforts? If this is the test, then under the circumstances in this case Mrs. Emmert needed nothing from the estate of her deceased husband, for she has ample means of her own to provide for her necessities and comforts during her few remaining years. To apply the tests laid down in either the Washburn case or the Connor case (1913), 254 Mo. 65, 49 L. R.A. (N.S.) 1108, 162 SW 252, is but to penalize a widow for being insane."

A somewhat similar result was reached in Re: Stevens (1913) 163 Iowa, 364, 144 NW 644, where, although the widow was ninety-two years old and it was conceded that the provision of the will was sufficient to support her during the remaining years of her expectancy, nevertheless the trial court elected to take her distributive share under the law. In affirming such election the court said: "Assuming that there was a right or necessity for compelling an election, the usual rule in such cases should be to give to the widow that which would be

of the most benefit to her, and we are not sure that the value of her estate after death is not a proper matter for consideration. When the widow herself elects, she generally selects that which would be of most value, and as a rule an estate in fee to a considerable amount of land is of more value than a life estate in all of it. It is quite natural in such a case for a widow, if she has heirs, to take them into account when she makes a voluntary election, and, this being true, the court may do the same thing without being charged with an abuse of discretion. No hard and fast rule should be announced for these cases. At best, it is largely a matter of discretion, which will not, as a rule, be interfered with on appeal."

Where the election of the guardian is in reality the election of the Court of Common Pleas, such election being judicial and not ministerial, the presumption in such cases is that the court gave due consideration to all the advantages and disadvantages of the choice, and kept in mind at all times the best interest and welfare of the lunatic. Steiniger's Estate (1924), 5 Pa., D & C 472."

We have given most careful consideration to the reasoning of the courts in both lines of decisions, and have attempted to apply them to the case now under consideration. It is our opinion that the decisions as quoted are more nearly applicable to the case at bar, and we feel impelled to follow the principles enunciated therein. As we have heretofore stated a Probate Court must place itself in the position of the surviving spouse and must assume that all of the qualifications of a true and loyal surviving spouse exists as hereinbefore set forth.

We have heretofore concluded that the statute cannot be so construed to neglect the provision to which the testator referred in his will, while its terms specify that the Probate Court shall consider the provisions made in the will.

We also have held that the situation is such as not to give rise to an estoppel against the surviving spouse or any one acting for her, but we have also concluded that the gifts made to the surviving spouse by the testator are not technical advancements. Yet, all of these matters must be taken into consideration in making our election.

We have heretofore held that the gift of $133,000.00 to Mrs. Morton constitutes an equitable advancement by her deceased

husband. We shall consider them in that light in making the election for the surviving spouse. The court in making her election is therefore faced with two alternatives. She may return the $133,000.00 to the estate and then participate in the estate as though he had died intestate. Or, she may retain the $133,000.00 and abide by the terms of the will. The latter course would yield a larger amount of money for the surviving spouse. Yet, we are not inclined to decide the matter purely because her portion would be more valuable than what she would receive under the other course. We cannot conceive that Mrs. Morton would be more happy nor would her wants be any more fully taken care of if she were possessed of one-third of the entire estate, plus the $133,000.00. The $133,000.00 is more than ample to provide for all her wants and necessities during the remainder of her life as indicated by her husband's will. We cannot conceive of her happiness or welfare being enhanced in any manner by having a larger amount of money put into her hands or the hands of her guardian.

We therefore believe that the provisions made by Mr. Morton during his lifetime under the circumstances which we have related are "better" for her than if she were required to return the $133,000.00 to the estate and then participate in the same according to the laws of descent and distribution.

We therefore elect that she shall abide by the terms of the will and not participate in the estate left by Mr. Morton, and we therefore enter our order accordingly.