106 So.2d 558 (1958)
Carrie E. EDWARDS, acting by Grady C. Harris as her guardian ad litem in relation to the election of dower, etc., and said guardian ad litem, Appellant,
v.
Leroy S. EDWARDS and Little River Bank & Trust Company, as executors of the last will of Landon E. Edwards, Deceased, Appellees.
Supreme Court of Florida.
November 19, 1958.
*559 Grady C. Harris, Miami, for appellant.
F.M. Hudson, of Hudson, McNutt, Campbell, Isom & Rearick, Miami, and Hilbert I. Trachman, New York City, for appellees.
O'CONNELL, Justice.
This appeal is taken by the incompetent widow of the deceased, Landon E. Edwards, through her guardian ad litem, and by her guardian ad litem. Appellees are the executors of the deceased's estate, Leroy S. Edwards, decedent's brother, and the Little River Bank and Trust Company. The appeal is from the order of the circuit court affirming the final order and judgment of the probate court denying the incompetent widow's election to take dower, said election having been made for her by her guardian ad litem.
Shortly after the death of Landon Edwards on January 29, 1954, his widow's assets were assessed at $310,582.30 and his at $849,776.99. (We were told on oral argument that her assets have now materially increased.) Mrs. Edwards was at that time eighty years old, and was confined to a hospital. Due to her mental incompetency a guardian ad litem was appointed for her. On September 29, 1954 *560 he filed for her the election to take dower. This controversy is essentially one between the heirs of the deceased husband's estate and the prospective heirs of her estate.
The basic contention of the appellants is that Section 731.35(2), F.S.A. gives to the guardian of an incompetent widow the initial power to elect whether the widow should take dower in lieu of under the will and the county judge is given power only to review such election "as the best interest of the widow may require." It is argued that this statute should not be interpreted to mean that the guardian should petition the county judge to make an initial determination as to whether the widow should take dower. We think it makes little difference whether the guardian is given the power to elect dower, subject to review by the county judge, or whether the guardian petitions the county judge to make an initial determination of the right to dower. In either instance the county judge must exercise the same discretion guided by the same rule and he has the power to grant or deny.
Section 731.35(2), F.S.A., enacted as Chapter 26948, Laws of Florida 1951, reads in part as follows:
"The guardian of a widow suffering under disabilities may, at any time during which the widow might have done so, file an election on behalf of the widow to take dower in lieu of the provisions of the will of her husband or under the law of descent and distribution, and thereupon the county judge shall grant or deny such election as the best interest of the widow may require. * * *" (Emphasis ours.)
Appellants contend that this Court in an opinion rendered in 1930 recognized the power of the Legislature to enact a law giving to the guardian of an incompetent widow the right and power to elect to take dower. Referred to was First National Bank of St. Petersburg v. MacDonald, 1930, 100 Fla. 675, 130 So. 596, 598, wherein this Court said:
"* * * The right accorded the widow [to renounce the provisions of the will] is personal and absolute to her, and, if exercised as the statute provides, is incontestible by devisees, legatees, heirs, or creditors. * * *
"If the statute in terms extended the right to renounce to the guardian or other representative of the insane widow, the same rule might apply, but our statute does not in words or by fair implication extend the right to renounce the provisions of the husband's will to his insane widow or to her guardian for her. * * *
* * * * * *
"* * * As to the sane widow, we have shown that the act of renunciation is personal, absolute and incontestible. The same right might be exercised by her guardian for her if specifically directed by statute; * * *." (Emphasis ours.)
Appellants argue that the subsequent statute, Chapter 26948, Laws of Florida 1951, now Sec. 731.35(2), F.S.A., gave to such guardian the same right of election which a sane widow enjoys. They say that such election by the guardian should have been denied only upon a showing that the guardian acted arbitrarily or in bad faith, dishonestly or through improper motives, or that the election was plainly unreasonable or an abuse of discretion on the part of the guardian, and that since there was no such showing in this cause the election to take dower made by the guardian should have been granted by the county judge.
In other words, it is argued that the statute gives to the guardian of an incompetent widow the power to elect to renounce the provisions of her husband's will and that such power closely approached the absolute and incontestable nature of a sane widow's power to so elect.
These arguments cannot be sustained. Prior to the enactment of what is now Sec. 731.35(2), F.S.A., only a court of *561 equity had the power, exercised in its discretion, to elect to renounce the provisions of a will for an incompetent widow. Such was the unequivocal pronouncement of this Court in the MacDonald case, supra, 130 So. at page 598. That case pronounces the rule and proclaims the reasons therefor. The Court, 130 So. on pages 598-599, made the following statements:
"If the statute in terms extended the right to renounce to the guardian or other representative of the insane widow, the same rule might apply, but our statute does not in words or by fair implication extend the right to renounce the provisions of the husband's will to his insane widow or to her guardian for her. When the right of renunciation is not thus extended, a court of equity may on proper showing made elect to renounce for her. * * *
* * * * * *
"An insane widow or one acting for her does not come into a court of equity for the purpose of renouncing her husband's will on like terms and in the same legal status as if she were sane. As to the sane widow, we have shown that the act of renunciation is personal, absolute, and incontestible. The same right might be exercised by her guardian for her if specifically directed by statute; but, our statute not having so directed, she is left to her remedy in a court of equity. When made by a court of equity, election is no longer personal and voluntary, but must be predicated on some ground of equity shown to exist in favor of the widow, and of which she is deprived by the will. In determining whether such equity exists, the chancellor will be guided by what is to the best interest of the afflicted widow.
* * * * * *
"An exercise of the right of election under the circumstances presented in this case involves the application of equitable principles that have their root deep in the equity jurisprudence of England, principles that indeed were old when the Cavaliers cast anchor off Jamestown, and the Pilgrims off Cape Cod. The conclusion is therefore inescapable that in this state the jurisdiction of a court of equity must be invoked to determine when and under what circumstances the will of the husband may be renounced in the interest of the insane widow, and that the absolute right of the sane widow to renounce the provisions of the husband's will and take under the statute is personal to her, and does not extend to her guardian for her." (Emphasis supplied)
It cannot be presumed and there is nothing offered to show that the legislative intent in enacting Sec. 731.35(2) was to take from a court its discretion in such matters and give it to the guardian. We find the very words of the statute support this view in that the statute provides that the county judge shall "grant or deny", indicating that he, not the guardian, is given a discretion as to whether or not the election should be granted, which discretion is to be exercised "as the best interest of the widow may require." The discretionary character of the obligation imposed upon the county judge concerning the election of an incompetent widow, through her guardian, becomes apparent when compared with the mandatory language in Sec. 733.09, F.S.A., wherein the personal representative is instructed what to do when the competent widow elects to take dower. That section reads:
"The personal representative shall lay off and assign dower immediately after the widow has exercised her election to take dower."
It is noted that the section above quoted does not provide that such dower shall be assigned upon the election of the guardian for an incompetent widow. No doubt the same mandatory obligation lies upon the personal representative when the county *562 judge grants an election made for an incompetent widow by her guardian.
Also, it should be noted that the proceedings for the assignment, as specified in Sections 733.10 through 733.14, F.S.A., do not concern the question whether the widow has the right to elect to take dower but concern only what properties shall be subject to such dower.
We conclude that the statute enacted subsequent to this Court's opinion in the MacDonald case, supra, did not extend to the incompetent widow's guardian the absolute and incontestable right of election enjoyed theretofore by the sane widow. The statute's effect is merely to permit such guardian to initiate the election to take dower in the county judge's court rather than having the election made for the widow by a court of equity; the court (the county judge) is given the same power, previously held by a court of equity, to grant or deny such election, in its discretion, which discretion is governed only by what the best interests of the widow may require. The net result of the statute is simply to authorize the county judge's court to exercise the jurisdiction previously vested in a court of equity.
The statute did not change the rule announced in the MacDonald case, supra, so as to give the guardian of an incompetent widow a right to dower in anywise akin to the right of a competent widow to elect dower. The statute preserved the rule in the MacDonald case.
The general rule appears to be that when the widow is incompetent her guardian cannot elect to take dower for her but such right must be exercised by a court of competent jurisdiction. 17A Am.Jur., Dower, Sec. 130; 57 Am.Jur., Wills, Sec. 1528; 44 C.J.S. Insane Persons §§ 85, 100; Annotation 74 A.L.R. 452 (1931); 147 A.L.R. 336 (1943); 4 Page on Wills, Sec. 1363 (3rd ed. 1941). Our interpretation of the statute is consistent with this rule.
The remaining issue is whether under the facts the county judge properly exercised his discretion in denying the election.
At first hand it may be difficult to comprehend how the denial was in the "best interest of the widow," which is the criteria established by the statute for the exercise of such discretion.
The widow's estate was in excess of $300,000 and the decedent's estate in excess of $800,000. Under the provisions of his will a trust was set up under which its income, and its corpus, if necessary, were to go to the widow only if her properties should "prove insufficient for her proper care and maintenance and to provide for her reasonable wants." Since she was an incompetent confined to a hospital and her own properties were rather extensive, it would appear, on the one hand, that in all probability she would receive nothing under the terms of the will. From this viewpoint her best interest would appear to be served by electing to renounce such provisions and take instead one-third of her husband's estate of $849,776.99.
On the other hand, under the provisions of the will the widow could have both the income from the trust set up by her husband's will and, if necessary, its entire corpus, to provide for her care, maintenance and reasonable wants. From this viewpoint, it would appear to be in her best interest to take under the will since she could thereby have at her disposal the entire $849,776.99 in lieu of only one-third of such amount. It is true, however, that because of the widow's incompetency, age and the size of her own estate it is probable that she will never utilize any of the income or corpus of the trust established by her husband. But this cannot be considered as evidence that it would be to her best interest to renounce the will, rather it is proof that her best interest does not require her to renounce and take dower because under her circumstances she will probably have no need of her husband's property.
The widow's heirs, it is argued, are severely prejudiced by the county judge's *563 ruling which requires that her estate be depleted before the husband's could be called upon to make payments for her care and maintenance. Whether the trust terms require that the assets of, as well as the income from, her estate be used up first does appear to be ambiguous, as recognized by the circuit court in its order of affirmance. The appellees, the executors of the husband's estate, do not on this appeal take the stand that such is the intent of the terms of the trust. They do argue, however, that the county judge properly refused to consider the best interest of the widow's heirs.
Appellants seek to derive support for their argument that the county judge should have considered the best interest of the heirs of the incompetent widow through the provisions of the second sentence of Sec. 731.35(2), not previously quoted herein. That portion of the statute reads as follows:
"* * * If the widow shall die prior to the expiration of the time allowed for the filing of her election to take dower in lieu of the provisions of the will of her husband or under the law of descent and distribution, and shall not have filed such election, then the same may be filed at any time before the expiration of such period by any person who has a beneficial interest in the estate of such deceased widow, and such election shall be granted or rejected by the county judge as the best interest of the parties entitled to participate in the estate of the deceased widow may require." (Emphasis supplied.)
The quoted portion of the statute might be conclusive in support of the appellants' argument if it provided that if the incompetent widow should die before expiration of the time within which to elect and her guardian had not so elected, then the election could be made as specified. The statute, however, does not so provide and cannot sustain such an interpretation.
In arriving at his determination that the best interest of the widow would be served by not renouncing the provisions of the will, the county judge had as guidance several facts and circumstances reflected in the record, as will be noted. Authority for the use of such guides is found in First National Bank of St. Petersburg v. MacDonald, 130 So. 596, supra, at page 598:
"In determining what is for the best interest of the afflicted widow, the chancellor will generally be influenced by these considerations: (1) The husband's right to dispose of his estate is limited by the right given the widow to renounce the provisions of the will in her behalf and take under the statute, but the sole reason in law for giving the widow the right to renounce is to insure ample provision for her personal needs and comforts. (2) Her personal needs and comforts may not be confined to pure monetary considerations. (3) The matter of enriching the widow's estate and passing something to her kinspeople has no place in the chancellor's consideration. (4) The kinspeople of the wife have no claim direct or indirect on the estate of the husband. (5) The fact that a permanently insane widow knows nothing of the value of money, cannot use it with discretion and has no need for money nor property save to furnish ample comforts and needs, may be considered. (6) It may also be borne in mind that, when the husband has made ample provision for his insane wife, he has an inherent right to dispose of his property as he pleases, provided the disposition be not contrary to public policy. Other considerations will no doubt arise from time to time. In re Connor's Estate, supra [254 Mo. 65, 162 S.W. 252, 49 L.R.A.,N.S., 1108]; Penhallow v. Kimball, 61 N.H. 596; Emmert v. Hill, 226 Ill. App. 1."
See also 4, Page on Wills, Sec. 1363, supra.
*564 We find that the county judge's determination to deny the guardian's election to renounce the provisions of the will was justified by facts and circumstances reflected by the record before us.
Among these is the fact that the widow's own properties were substantial and the likelihood that additional assets would be needed for her care, maintenance and reasonable wants does not appear to be great; if the need arose, however, the terms of his will amply provided for such. As stated in the MacDonald case, the sole reason in law for giving the incompetent widow the right to renounce is to insure ample provision for her personal needs and comforts. If such needs and comforts are provided for, her best interests do not require, considering the limitations of the right to dower, that the widow renounce the will merely to obtain assets greatly in excess of those needed. The only way in which her interest would be bettered thereby would be that she would subsequently leave for her heirs, at the expense of her husband's heirs, a larger estate. We have already noted that in the case of an incompetent widow the best interest of her heirs are not to be considered.
Although the widow was not actually adjudicated incompetent until the month following her husband's death, the record shows that she had been an invalid and confined to a hospital for several years prior to his death. Having made ample provisions for her welfare, the husband was entitled to dispose of his property as he pleased. No equitable ground exists warranting the widow, under all of the circumstances of this case, to prevent the execution of his testamentary desires through exercising an election to take dower. In a sense she was legally dead and thus the husband's testamentary planning was no doubt influenced by a situation as though his wife had predeceased him.
Further corroboration of the county judge's ruling is found in the fact that there was evidence before him to the effect that a substantial part of the widow's estate was acquired from and through her husband. Appellants objected to his consideration of the testimony as to those matters given by Leroy Edwards, deceased's brother, due to the provisions of Sec. 90.05, F.S.A., Florida's "Dead Man's Statute." However, even excluding some of such testimony accordingly, there remained sufficient evidence on this matter for the county judge's determination.
Before the widow became incompetent she executed her will by which her husband had the power to use and dispose of her properties during his life. Had she died before him, it is possible that under the provisions of her will he could have exhausted her estate to some extent or even entirely, thereby leaving little or nothing to be distributed from her estate to her heirs on his death. Appellees argue that the county judge could derive from these facts the indication that had the widow been sui juris when her husband died she would not have chosen to prevent the execution of her husband's testamentary plans by renouncing the provisions of his will. We find merit in this supposition and see in it further equitable ground to support the denial of the election to take dower.
We conclude that the record supports the finding of the county judge that the best interest of the widow did not require the renouncing of the will and the taking of dower. The essential equitable grounds requiring the granting of such election were not present. The circuit court was therefore eminently correct in affirming the order of the county judge.
Affirmed.
TERRELL, C.J., and ROBERTS, DREW and THORNAL, JJ., concur.