Davis et al. *v.* Warner, Admr., et al.

(Decided December 12, 1933.)

*Mr. T. B. Mateer* and *Messrs. Ulrey & Ashbaugh*, for plaintiffs in error.

*Mr. W. P. Vaughan, Mr. Benj. Olds, Mr. C. H. Wood* and *Mr. Walter Dressel,* for defendants in error.

SHERICK, P. J. This action was originally commenced in the Probate Court of Morrow county on the 12th day of December, 1932. Thereafter the cause was heard upon appeal by the Court of Common Pleas, and a different conclusion was therein reached. On September 14, 1933, error proceeding was instituted in this court. The matters presented are of more than passing interest inasmuch as the proceeding is one under the declaratory judgment statutes, Sections 10505-1 to 10505-10, inclusive, General Code, enacted as a part of the new Probate Code. Its effective date was January 1, 1932. These named sections had a short life. They now stand repealed and supplanted by General Code Sections 12102-1 to 12102-16, inclusive, which are known as the "Uniform Declaratory Judgments Act", and whose effective date is October 10, 1933.

It is apparent from the dates recited that the remedy invoked must be measured by such relief as is pro-

vided in repealed Sections 10505-1 to 10505-10, inclusive, General Code.

The original petition was filed by Forrest McClelland as executor of the will of Frank McClelland, deceased. It recites that the testator died on January 29, 1932, and thereafter, on February 4, next, his will was admitted to probate; that his widow, Leah McClelland, died intestate on February 9, 1932, without having made an election to take under the will, and that the husband and wife died without issue. It is averred that the debts of the testator's estate have been fully paid, and there remains in the executor's hands the sum of $20,045.84, which he stands ready to pay to the legatees named in the will, the balance to be paid to the heirs of the deceased couple under the laws of descent and distribution.

It is pleaded that numerous questions have arisen as to the distribution to be made; a copy of the will is attached; and the direction and judgment of the court is prayed for.

The will gives all property, real and personal, to the wife for life, and at her death all is to go to testator's nephews and nieces by blood, all of whom are parties hereto. The widow is survived by a brother and sister, they are parties herein, as is also the brother as administrator of his deceased sister. The brother as administrator was the appellant in the intermediate court.

T. B. Mateer, as assignee of one of the blood nephews of the testator, files an answer to the petition, and avers the facts to be that, prior to July 18, 1931, the testator and his widow entered into an agreement whereby at the death of either the property of the other was to go to the survivor for life, and at the death of the survivor the property of the testator was to go to his nephews and nieces, and the wife's property to her heirs at law. We here mention this averment because it is now claimed that the court erred in

not receiving the agreement in evidence. There is no bill of exceptions here filed. We are therefore unable to say that error was committed thereby. In the absence of such, the presumption is otherwise, and we will indulge no other.

It is first urged that the Common Pleas Court was without jurisdiction to hear the appeal for two reasons: First, that the appellant administrator had given no bond, that he did not appeal in the interest of his trust, but in his individual capacity as one of the two heirs at law of his deceased sister, and, hence, that the filing of notice of his intention to appeal was not sufficient. This claim is without merit. The fact that he might eventually receive something as an heir at law out of his deceased sister's estate does not make his appeal one for his sole benefit. The widow's estate would primarily benefit by an advantageous judgment, and his interest, if any there might subsequently be, would only be secondary. We hold that Section 11209, General Code, has direct application, and that the giving of notice of intention to appeal was sufficient.

The second reason assigned is that the Common Pleas Court was without jurisdiction to render a declaratory judgment. It is contended that the then Section 10505-1, General Code (114 Ohio Laws, 320, 362), provided that Probate Courts only had jurisdiction to so do, and that jurisdiction was exclusive in that court. This court held in the case of *Wagner* v. *Schrembs,* 44 Ohio App., 44, 184 N. E., 292, that the Court of Common Pleas had no original jurisdiction in such matters, but it was not there determined that that court had no appellate jurisdiction in such a proceeding.

It is provided by the Constitution of Ohio that the Court of Common Pleas shall have such jurisdiction as shall be fixed by law. And we find it then enacted, in Section 10505-5, General Code, that such an appeal might be taken to the Court of Common Pleas, as in other matters. This section must therefore conclu-

sively refute the second reason assigned. The proceeding was appealable to the Court of Common Pleas.

It was the judgment of the Probate Court that the entire estate of the testator should go to his nephews and nieces under the provisions of the will. The Court of Common Pleas reached the conclusion that the widow, having failed to make an election within the time prescribed by law, took under the statute of descent and distribution, and hence her estate was entitled to the one-half of her husband's estate. These contrary judgments reflect the reason for this proceeding in error.

It is now claimed by counsel for the legatees that Section 10504-60, General Code, does not apply in this instance for the reason that the widow died prior to the filing of the schedule of debts, and that the section can only apply when a widow dies within one month after such schedule is filed. In other words, the plaintiffs in error claim that a surviving spouse cannot make an election until after such schedule is filed and service of citation made upon her.

We believe it to have been the general understanding, judicially recognized, that, after the expiration of the period of one year in which an election might have been made, after citation had been issued, as provided in Section 10567, General Code, now repealed, an election could not be made. It amounted to and was a statute of limitation. This section is now supplanted by Section 10504-55, General Code, which shortens the time of limitation to thirty days. The new section, however, contains a further salient provision, in that it repeals old Section 10566, General Code, which provided that a citation to make an election should issue forthwith after probate of the will. The Legislature now recognizes in Section 10504-55, General Code, that this was unfair, in that a widow should not be forced to elect before it could be known just what indebtedness stood against the estate, when the estate's value

was undeterminable. Hence the present act's direction and change in this respect is but a postponement of the time of issuance of. the citation. It was not the intention of the statute to say that an election could not be made until after a schedule of debts had been filed and citation issued. Such was not the practice under the old law and should not be under the new. If a relict has knowledge of the estate's condition, or even if she lack that knowledge, and understandingly and purposely makes a premature election, that is, before a schedule of debts has been filed, we see no reason why such should be invalid and of no effect. Neither the old law nor the new Probate Code prescribes that such may not be done. One may answer to a suit before he has been served with summons, and the answer is not a nullity.

Turning now to Section 10504-60, General Code, we find it written: "If the surviving spouse fails to make such election in person or by written instrument *within the time limit provided by law,* such spouse shall be conclusively presumed to have elected to take under the will and shall be bound accordingly, and persons may deal with property of the decedent in accordance therewith. If the surviving spouse dies *within the time limit for election* without having elected, then such spouse, whether or not a citation has been issued, shall be presumed conclusively to elect to take under the statute of descent and distribution." (Italics ours.)

The plaintiffs in error draw our attention to the italicized phrases, *supra,* and propound the query: What period of time is embraced within their contemplation? And in accordance with their claim hereinbefore recited they question the constitutionality of the section and say that it violates Section 28 of Article II of the Ohio Constitution. We are unable to perceive wherein the statute contravenes Article II.

Section 10504-56, General Code, lends aid in answer-

ing what period of time is contemplated in Section 10504-55, General Code. It also explains the italicized phrases noted in Section 10504-60, General Code. It in part reads: ''Whether or not a citation be issued, the election of the surviving spouse may be made in person, * * * or by written instrument * * * filed in the probate court within the time allowed by law for making an election.''

This seems to recognize that in a proper case a citation may be dispensed with and a valid election made. If a spouse should understandingly make an election before the filing of a schedule of debts, it would seem preposterous that the Probate Court should thereafter be required to issue a citation. This section, 10504-56, General Code, recognizes that an election may be a binding one, even if citation were not issued, provided it be made ''within the time allowed by law.'' We conceive it to be the rule, under both the old and new sections, that an election may be made at and after a will's admittance to probate up to the time of stoppage of such right, which is now thirty days after citation has been issued. Treating this portion of Section 10504-55, General Code, as a statute of limitation, it may be remarked that statutes of like kind are primarily concerned with the date that bars the assertion of the right; few, if any, are to be found that prescribe that an action may not be commenced when the cause of action accrued. The right of a spouse to elect has its beginning with the judicial act which admits the will to probate. The Legislature never intended to postpone the recognition of this right until the court issues a citation to elect; or to cause the act of making an election to be dependent upon an act of the Probate Court. It expressly said that if the Probate Court did issue a citation, as the statute commanded, a surviving spouse must then elect within thirty days or the right to exercise the privilege should be withdrawn.

Holding the views herein expressed, it naturally fol-

lows that the last portion of Section 10504-60, General Code, has direct application to the present situation, as the surviving spouse did die "within the time limit for election", without having made an election; she must therefore be conclusively presumed to have elected to take under the statute of descent and distribution.

Plaintiffs in error urge that if the widow takes under the statute of descent and distribution, that is, paragraph 4 of Section 10503-4, General Code, she then takes all of the estate. If this had been a case wherein the deceased spouse had died intestate, this general section would be controlling. We find, however, that the Legislature placed a limitation on this rule in the event the deceased consort died testate and the surviving consort elected to take under the statute of descent and distribution. Section 10504-55, General Code, in part provides: "But in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the estate."

The rule of statutory construction is that where a legislative body has enacted general laws upon a given subject, and has in the same act further legislated that in a particular given instance an exception shall be engrafted upon the general rule, the special statute must be held to prevail over the general act in such particular instance. Such being the rule of construction, it follows that Section 10504-55, General Code, is here controlling, unless it be that the rule does not apply because of the fact that the relict died "within the time limit for election without having elected", as provided in Section 10504-60, General Code.

That part of the new Probate Code embraced within Sections 10504-55 to 10504-65 has to do specially with the subject of election. It would be indeed strange if the words "to take under the statute of descent and distribution", appearing in both Sections 10504-55 and 10504-60, General Code, should have different mean-

ings in the two sections. The strong presumption is to the contrary. Section 10504-55 has to do with an election to take under the law, made within the time limit, while Section 10504-60, in its last part, has to do with those cases wherein, within the time limit, an election is not or cannot be made by reason of death within the time limit.

Judge Matthews, in *Miller, Admr.,* v. *United Brethren Church,* 31 N. P. (N. S.), 43, tersely remarks that if the view of the plaintiffs in error was adopted its effect would be to "give to those claiming through the surviving spouse a greater interest in the estate than the surviving spouse would have taken had he or she survived and actually made the election."

It is our view that the words, "to take under the statute of descent and distribution", appearing in Section 10504-60, must be given the same meaning and construction and be subject to the same limitation as appears in Section 10504-55. We find no error in the judgment of the Court of Common Pleas, and its judgment must therefore be affirmed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.