IN RE ESTATE OF CALLAN: CALLAN, APPELLANT, *v.* OLSON, GDN., ET AL., APPELLEES.

(No. 23773—Decided June 27, 1956.)

*Messrs. Hauxhurst, Inglis, Sharp & Cull,* for appellant.

*Messrs. Quinn, Horning & LaPorte,* for appellee Eilene Marie Olson.

*Mr. T. G. Thompson,* for appellee The National City Bank of Cleveland.

HURD, J.  Plaintiff, appellant herein, a sister of William H. Callan, deceased, brings this appeal on questions of law from a judgment of the Probate Court of Cuyahoga County, wherein the Probate judge made an election on behalf of the incompetent widow of decedent to take under the law rather than under the will, in pursuance of the provisions of Section 2107.45 of the Revised Code.

William H. Callan died testate on September 17, 1955, leaving a gross estate of approximately one-half million dollars. He was survived by his widow, Hanna G. Callan, who was 83 years of age and incompetent at the time of his death. There were no children born as issue of the marriage.

On October 5, 1955, Eilene Marie Olson, niece of Hanna G. Callan, was appointed her guardian. On October 6, 1955, the will of decedent was admitted to probate. In accordance with the provisions of the will, The National City Bank of Cleveland was appointed executor. On October 19, 1955, on application of

her guardian, the Probate Court appointed a commissioner to ascertain the value of the provision made for the widow by decedent in his will and the value of her rights under the law.

On December 20, 1955, the commissioner filed his report. He found that the value of the widow's interest under the will was $83,900. He found that the value of the widow's interest under the law was $267,736.

Although the commissioner recognized that there was "real value in the right of the surviving spouse under the will to request that the trustee invade the corpus of the trust estate for her comfort and support," he stated that he was "unable to translate the value of this right into dollars."

He then made an analysis of the estimated annual income of the widow. He thought such an analysis was relevant in a consideration of the extent to which the widow might need money from the corpus of the trust estate. He submitted the following figures:

| | | | |
|---|---|---|---|
| Residue to Trustee | | $371,977 | |
| Annual income from residue at 4% | | | $14,879 |
| Separate assets of surviving spouse: | | | |
| Securities | $176,062 | | |
| Cash | 6,000 | | |
| Property exempt | 30,000 | | |
| Insurance proceeds | 2,500 | $239,562 | |
| Annual income from separate assets at 4% | | | $ 9,582 |
| Non-income producing property | $ 30,000 | | |
| Residence | 1,050 | $ 31,050 | |
| Property under will | | | |
| Total estimated annual income | | | $ 24,461 |

The commissioner then concluded his report with the following comment:

"Your commissioner is unable to estimate the amount, if any, which the surviving spouse may need in addition to the foregoing for her comfort and support. Any estimate would be speculative and of no assistance to the court. Accordingly, the value under the will has been computed without regard to the possibility of supplementary payments from the corpus of the estate."

On December 21, 1955, prior to the hearing on the commissioner's report, decedent's sister, Mary E. Callan, filed an application for "Application to take under the will." On the same day, the court made an entry denying the application of Mary E. Callan that the widow be required to make an election under the will.

Also, on December 21, 1955, the court, in pursuance of Section 2107.45, Revised Code, made the following entry:

"December 21, 1955  This day came Thomas P. Mulligan, who was heretofore appointed as commissioner to ascertain the value of the provision made in the will of the said William H. Callan, deceased, for his surviving spouse who is now under disability and the value of the rights of such spouse under the law and to which she is entitled is more valuable and better than the provision made by said testator for his said spouse in his said will. It is now ordered that an election for said widow to take under the statutes of descent and distribution be made; and it is further ordered that the election so to take be entered upon the journal of the court."

Thereafter, the appellant made a motion to set aside the election under the law and to require that an election be made under the will, which motion the Probate judge denied. A motion for new trial was then filed by appellant and was overruled by the court. Thereafter, appeal was prosecuted to this court, setting forth assignments of error as follows:

"1. A. The court erred in electing for the incompetent widow to take under the law instead of under the will.

"B. The court erred in overruling the motion for new trial.

"C. The court erred in overruling the motion to set aside election under law and make election under will.

"2. The court erred in making an election before the schedule of debts had been filed."

All three parts of the first assignment of error may be condensed into one question, namely: Did the Probate Court commit prejudicial error in electing that the testator's widow take under the law?

The answer to this question involves the jurisdiction of the Probate Court.

"The jurisdiction of the Probate Courts of Ohio is conferred directly by Section 8, Article IV of the Ohio Constitution, and by legislation passed pursuant to the legislative authority granted in that section of the Constitution, which legislation may expand but may not restrict or detract from the specific jurisdiction conferred by that section." Paragraph one of syllabus of *In re Estate of Miller,* 160 Ohio St., 529, 117 N. E. (2d), 598, 46 A. L. R. (2d), 493.

Section 2101.24, Revised Code, provides in part:

"The Probate Court shall have plenary power in law and in equity fully to dispose of any matter properly before the court, unless power is expressly otherwise limited or denied by statute."

With those fundamentals in mind, we come to a consideration of Section 2107.45 of the Revised Code, which defines the procedure to be followed by the court when a surviving spouse is under legal disability. Section 2107.45 provides:

"When, because of a legal disability, a surviving spouse is unable to make an election as provided by Section 2107.39 of the Revised Code, as soon as the facts come to the knowledge of the Probate Court, it shall appoint some suitable person to ascertain the value of the provision made for such spouse by the testator and the value of the rights in the estate of such testator under Sections 2105.01 to 2105.21, inclusive, of the Revised Code. Such appointment by the court shall be made at any time within the time allowed for election under Section 2107.39 of the Revised Code.

"When the person appointed returns the report of his investigation, the court shall determine whether the provision made by the testator for the surviving spouse in the will or the provision under Sections 2105.01 to 2105.21 inclusive, of the Revised Code, is better for such spouse and shall elect accordingly. *The court shall thereupon record upon its journal the*

*election made for such spouse, which election, when so entered, shall have the same effect as an election made by one not under such disability.*" (Emphasis added.)

Thus, that section of the Code vests the Probate Court with full power and authority to determine what "is better for such spouse," and the election when so made has the same effect as an election made by a competent spouse.

It becomes important, then, to consider the rights of a surviving spouse when competent to elect to take under the law or under the will. Provision is made for an election of a competent surviving spouse by Section 2107.39, Revised Code, the pertinent part of which provides as follows:

"After the probate of a will and filing of the inventory, appraisement, and schedule of debts, the Probate Court *on the motion of the executor or administrator, or on its own motion,* forthwith shall issue a citation to the surviving spouse, if any be living at the time of the issuance of such citation, *to elect whether to take under the will or under Section 2105.06 of the Revised Code. If such spouse elects to take under such section, such spouse shall take not to exceed one half of the net estate* and unless the will shall expressly provide that in case of such election there shall be no acceleration of remainder or other interests bequeathed or devised by the will, the balance of the net estate shall be disposed of as though such spouse had predeceased the testator. The election shall be made within one month after service of the citation to elect, or if no citation is issued such election shall be made within nine months after the appointment of the executor or administrator. * * * The election shall be entered on the journal of the court." (Emphasis added.)

Section 2107.43 of the Revised Code provides that whether or not a citation is issued the election of the surviving spouse shall be *made in person* and "when the election is made in person before such judge or referee, the judge or referee shall explain the will, the rights under such will, and by law, in the event of a refusal to take under the will."

We find no provision in the Constitution or the laws enacted thereunder with respect to the jurisdiction of the Probate Court which permits someone other than the executor, adminis-

trator or the court itself, either to move for the issuance of a citation to the surviving spouse or to compel the choice or election that should be made in either case, either by the surviving spouse when competent or by the court when the surviving spouse is incompetent.

While Section 2107.43 of the Revised Code requires the judge or referee to explain the will, the rights under such will, and by law, in the event of a refusal to take under the will, nevertheless, it is clear from an examination of the applicable statutes that the right of a widow to take, either under the law or under the will, is an absolute right in the nature of a personal privilege which can not be taken from her. Consequently, it follows that when the Probate judge, acting in pursuance of and in accordance with the provisions of Section 2107.45, Revised Code, makes an election for an incompetent widow, he simply takes the place of such surviving spouse, and the election when made, likewise, vests in her an absolute right in the nature of a personal privilege which can not be taken from her at the instance of the third parties.

The election by the Probate judge is made for the benefit of incompetent spouse and not for the benefit of third parties, and, in so doing, the judge must determine "whether the provision made by the testator for the surviving spouse in the will or the provision made under the law is better for such spouse," and shall elect accordingly. In other words, the Probate judge does for the widow that which she, because of her legal disability, is unable to do for herself. But once the election is made for her by the Probate Court, acting in pursuance of the statute, in the exercise of sound discretion, the election so made has the same effect as an election made by one not under disability, as provided by the last sentence in Section 2107.45, Revised Code; and her rights thereby become absolute, and third parties are without right to complain. In examining this record, we find that the Probate judge methodically and systematically acted in pursuance of Section 2107.45 in appointing a suitable person to ascertain the value of the provision made for such spouse by the testator and the value of the rights in the estate of such testator under the law. The commissioner so appointed made a complete and thorough examination of the value of

such rights and reported the same in writing, as appears in the record. The court then found, after the return of the commissioner's report, that it would be better to elect for such spouse under the statutes of descent and distribution and, thereupon, made a record of such finding upon its journal. We find no error by the Probate Court in its proceedings and no error in the judgment of the court as entered upon its journal in pursuance of the provisions of the statute. Further, we find that the Probate Court was not guilty of an abuse of discretion but acted completely within the limits of sound discretion in accordance with the jurisdiction and authority conferred by law.

As the record shows, the appellant is the sister of the deceased. The Probate Court's determination in pursuance of the statute, that the value of the right of the surviving spouse under the law is "better for her" than the provision made for her under the will, means that the widow immediately acquires one-half of the decedent's estate. Thus, this portion of decedent's estate is irretrievably lost so far as appellant is concerned. However, if the widow was to take under the will, in all likelihood, being aged, incompetent and having substantial assets of her own, she would not use the invasion of principal provision of the will.

The appellant argues in favor of the doctrine of "invasion of the principal" as being a great benefit to the surviving spouse. With this argument we can not agree. The provision of the will referred to is, in part, as follows:

*"If my said wife shall certify in writing to the trustee in any year that, after taking into account her income from other sources, it is necessary that she have an additional sum for her comfort and support, the trustee shall not be required to inquire into her need for or the application made by her of any such sum."* (Emphasis added.)

In our opinion, there would never be any reason, under the facts of this case, for the widow to certify that funds were needed for her comfort and support and, being under legal disability, she would not be competent to do so; and it is indeed questionable whether the guardian could do so in view of the fact that the will provides that the *widow herself shall so certify.* Thus, the appellant, as a relative of decedent, would benefit. Yet, the ap-

pellant's contention is that the court erred in electing for the widow that she take under the law. Appellant says that the court "should have chosen the 'deepest well,' the 'largest reservoir,'" and that this would be under the will and the widow's right under the will to invade the principal of the corpus of the trust set up for her by decedent. Appellant says that by reason of this clause, it was possible for the widow to secure the whole estate and not merely half as she obtained under the court's election. However, if this could be conceived to come to pass and the widow did secure the whole estate, it would defeat appellant's own interest in decedent's estate. Obviously, the appellant is arguing along this line because if the court had elected for the widow to take under the will, it would inure to appellant's own benefit. Hence, because of her interest in the residue, her contention that it would be better for the widow if the court's election had been for the widow to take under the will is being made because appellant believes it is in her own interests, rather than that of the widow. The position of appellant, therefore, is inconsistent, contradictory, and untenable in logic or reason, and can be explained only on the ground of self-interest.

The Probate judge, as appears at pages four and six of the record, questioned whether the sister of the decedent, the appellant herein, had any justiciable interest, but indicated that he would permit counsel to present their case to require the judge to elect for the widow to take under the will and, after argument, overruled the application.

The interest of the appellant is, as plainly stated by counsel, in a percentage of the residue as provided by the will. Therefore, appellant has no present justiciable interest which is entitled to recognition by the Probate Court in these proceedings. Consequently, we find no warrant in law for the interposition of the appellant in the proceedings so long as the widow is living.

The cases of *In re Estate of Knofler,* 143 Ohio St., 294, 55 N. E. (2d), 262 (73 Ohio App., 383, 52 N. E. [2d], 667), and *In re Estate of Morton*, 21 Ohio Law Abs., 438, 2 Ohio Supp., 361, have no application. In each instance the application was *made by the guardian of the incompetent* and, in the *Knofler case,* the legatees of the incompetent spouse did make an application simi-

lar to the one made here but at the time the application was made the incompetent spouse had died and the legatees had an immediate interest in the surviving spouse's estate. Here that is not the case and, therefore, the appellant is not in a position to challenge the judgment of the Probate Court.

The second assignment of error is that the Probate Court erred in making an election before the schedule of debts had been filed.

The question raised by this assignment of error was decided in the case of *Davis* v. *Warner, Admr.*, 47 Ohio App., 495, 192 N. E., 270, where it was held, as appears by paragraph six of the syllabus:

"Surviving spouse may make election at and after admittance of will to probate, within time limited, and need not wait until schedule of debts is filed and citation issued (Sections 10504-55 and 10504-56, General Code [Sections 2107.39 and 2107. 43, Revised Code])."

Hence, it is clear that neither the surviving spouse nor the court is required to wait until the schedule of debts is filed and a citation issued, but may elect at and after the admission of the will to probate, although in this case, it could not be claimed to be prejudicial in any event. Debts and costs of administration are set forth in the commissioner's report and would not in the least affect the result arrived at by the court in its determination of what is better for the widow. Furthermore, the statute (Section 2107.45) does not so limit the Probate Court in making its election for the incompetent spouse. No prejudice is shown nor does the appellant so contend. Therefore, the second assignment of error is without merit and must be overruled.

In conclusion, we hold that it is not for this Court of Appeals to substitute its judgment for that of the Probate Court. The judgment of the Probate Court, when acting within the limits of the statute and exercising sound discretion, can not be set aside in this appeal on the ground of error alone. It would seem that the only ground for attack on the court's judgment could be for an abuse of discretion; however, the appellant does not so contend but claims the court erred as a matter of law. This contention cannot be sustained on this appeal. Conse-

quently, assignments of error Nos. 1 and 2 are overruled, and the judgment of the Probate Court is affirmed.

*Judgment affirmed.*

KOVACHY, P. J., concurs.

SKEEL, J., dissenting. Under the law of Ohio, a widow has the privilege of electing whether she will, in the event her husband died testate, take the share of his estate as provided by the will or renounce that right and take under the laws of intestacy. Unquestionably, this salutary rule is to protect a widow from being disinherited and preserve to her the right to succeed to a reasonable portion of her husband's estate. The rule was not created for the benefit of anyone but the widow, certainly not for the exclusive benefit of her heirs at law to the absolute detriment of the heirs of the husband.

The law favors testacy, that is, that one should have the privilege of directing the disposition of his estate by will. This rule of law is supported by many decisions. Section 2107.41 of the Revised Code, providing that if the widow dies before the probate of the will, or fails to elect or dies before the time has expired for election, she shall be conclusively presumed to have elected to take under the will, gives legislative support to the rule supporting testacy and that the right of election is for the sole benefit of the widow.

The Legislature amended what is now Section 2107.45, Revised Code, in 1932 (114 Ohio Laws, 320, 358), changing materially the considerations upon which an election should be founded when made in case of the widow's incompetency. The words, "more valuable," were stricken from the statute, and the court is now directed to elect for the widow in case of incompetency on the basis of what "is better for such spouse."

The decedent and his widow had been married over 63 years at the time of his death on September 17, 1955. There had been no children of the marriage. Within three weeks of the husband's death, on October 5, 1955, a niece of the widow made application to have the widow probated as incompetent, seeking that she be appointed guardian. The application was granted,

and she was appointed guardian. The medical report, dated October 31, 1955, shows that the widow was about 80 years old and that for seven months prior to the report she had been suffering arteriosclerotic changes, causing senile dementia with total paralysis of her eliminating functions. She had been confined to a hospital, attended by special nurses at all times. She was returned to her home where she continued receiving nurse's help a week before the report was made. The medical report states that the probability is that there will be little, if any, change in her physical or mental condition in the future.

At the time of the decedent's death, his estate approximated one-half million dollars and that of the widow a quarter of a million dollars. The provisions of the wills of both the decedent and his widow are in the record. They tend strongly to show an agreed plan to distribute their property on an equal basis to the heirs of each. The will of the decedent, he having the larger estate, bequeathed 25 per cent of his estate to the heirs of his wife while no part of her estate was to go to the heirs of her husband.

The provisions of the husband's will (with a like provision —word for word—in the wife's will, executed on the same day, except for the change of the words "husband" for "wife" and "he" for "she"), for the benefit of the wife, are as follows:

"So long as my said wife shall live, the trustee, from the net income or corpus of the trust estate, shall pay over and distribute to my said wife, monthly, the sum of Five Hundred ($500) Dollars, and if in any year the net income shall be more than Six Thousand ($6,000) Dollars the trustee shall pay to her the entire amount of said income in excess of said Six Thousand ($6,000) Dollars. If my said wife shall certify in writing to the trustee in any year that, after taking into account her income from other sources, it is necessary that she have an additional sum for her comfort and support, the trustee shall pay over and distribute such sum to her from the corpus of the trust estate, but the trustee shall not be required to inquire into her need for or the application made by her of any such sum.

"After the death of my said wife, the trustee shall pay over and distribute the trust estate, together with any undistributed income therefrom, as follows: * * *."

The Probate Court, after appointing a guardian for the widow, upon request of the guardian, appointed a commissioner to report to it under the provision of Section 2107.45, Revised Code, the value of the estate to the widow under the provisions of the will and under the law of intestacy. The commissioner's report shows that in his judgment the value of the provision under the will for the surviving spouse is $83,000 and under the law of descent and distribution, $267,736. The report of the commissioner, however, shows that the $83,000 figure is based on the year's allowance made for the widow of $30,000, plus non-probate assets of $3,550, plus income of the net estate at four per cent for the remaining years of her life expectancy (3.39 years), equalling $50,440. No account whatever is taken of the right of the widow to use up the entire corpus of the husband's estate if need be for her support and if she so directs, which right could unquestionably have been exercised by her guardian under proper circumstances and in the exercise of reasonable discretion. *In re Trust Estate of Major C. Haughton,* 118 Vt., 228, 105 A. (2d), 257.

The report, in part, reads as follows:

"It is obvious that there is real value in the right of the surviving spouse under the will to request that the trustee invade the corpus of the trust estate if necessary for her comfort and support. Your commissioner, however, is unable to translate the value of this right into dollars. Your commissioner is advised that the surviving spouse is eighty-three years old and that she is attended at home at all times by a nurse due to arteriosclerotic changes in the brain causing senile dementia with complete paralysis of control of her eliminating functions. Her attending physician advises that little if any change in her physical or mental condition is probable in the future. * * *

"Your commissioner is unable to estimate the amount, if any, which the surviving spouse may need in addition to the foregoing for her comfort and support. Any estimate would be speculative and of no assistance to the court. Accordingly, the value under the will has been computed without regard to the possibility of supplementary payments from the corpus of the estate."

In disregarding this valuable right, and holding it to be of

no ascertainable value, which, under the will put the entire net estate of the deceased at the disposal of the widow for her comfort and support, the commissioner was in error and in following the report as the basis of making the widow's election as was done by the court, the court committed a serious abuse of discretion. What was "best for the widow" under the circumstances is clearly established by the record. The widow, 83 years of age, and seriously ill, and under guardianship, is limited in her needs to kindly care and all the comfort that can be made available to her for the few remaining years of her life. Transferring to her $267,736 of her husband's estate will contribute nothing to her well being and can have no other possible effect but to benefit her heirs to the detriment of her husband's heirs and completely destroy what appears on the face of the record to have been their joint plan for the distribution of their estates after death.

The income from her own estate, reckoned at four per cent, as did the commissioner in figuring the income to her from her husband's net estate, would equal about $10,000 a year, so that within her life expectancy there would be available to her over $34,000 a year for her comfort and support. If we extend the period to five years, the total income would exceed $32,000 a year, with the right to demand any necessary part of the corpus of her husband's estate of a half-million dollars should need be. Under the circumstances, the thing, above all else, that she does not need, is to take $267,736 from her husband's estate only to be paid into her guardian's account free of the protection of the trusts created by both the decedent and the widow in their respective wills.

How could the election made by the court, based on the report of the commissioner, which gave no consideration to the most valuable provision in her interest of the will, be "what is best for the widow," where by the election made, she would be cut off from the income of one-half of the net worth of her husband's estate? The half of the estate which she would receive under the election would be subject to the restricted ability of the guardian to invest such funds (certainly for less than four per cent, the figure arbitrarily used by the commissioner), and,

by such election, she would surrender the security that could be enjoyed from the remaining assets of the estate.

It should be observed that in all reasonable probability, because of the age of the widow, her condition of health, the income she now enjoys and will continue to enjoy as directed by her husband, no benefit will ever come to her by reason of the election made which clearly shows that the election was not made "for what is best for the widow."

It is suggested that there is no legal remedy providing for a review of the arbitrary action of the court in dictating an election so opposed to reason and without benefit to the widow as to constitute an abuse of discretion. It is true that the widow is granted the absolute power of election by statute and when such right is exercised by her, there can be no appeal from that determination. But here the right is exercised by the court under statutory authority to act for "what is best for the widow." An interested party in the legal proceeding, wherein such election is provided for, must necessarily have the right to a review of an order constituting an abuse of discretion which thereby directly affects substantial rights or interests of such party. (Sections 2505.02 and 2505.03, Revised Code.)

For the reasons, therefore, that the provision of the will of William H. Callan, putting the entire corpus of his estate to his widow's benefit and at her direction, she believing it to be needed for her comfort and support, was a valuable right and subject to her guardian's use, and to totally disregard such important factor in making the widow's election under Section 2107.45, Revised Code, and for the further reason that her needs for the foreseeable future were totally disregarded, constituted an abuse of discretion under the undisputed facts in this case; and an election made by the court to take under the law should be reversed and the application remanded with instructions to elect to take under the will.