RIELEY, DECEASED, ESTATE OF, IN RE.

Probate Court, Lake County.

No. 36-541.   Decided August 27, 1963.

POLLOCK, P. J. This matter is submitted to the Court on an application by counsel for the executors of the estate of Gertrude S. Rieley, deceased, and for the guardian of her incompetent surviving widower, Charles F. Rieley, for the appointment of a suitable person to ascertain the value of the provisions made for such spouse by the testatrix and the value of the rights in the estate of said testatrix under Sections 2105.01 to 2105.21, inclusive, Revised Code. The person appointed, referred to herein as the commissioner, was duly appointed and filed his report on July 23, 1963.

The commissioners findings of fact is as follows:

"1. The last will and testament of Gertrude S. Rieley, deceased, duly admitted to Probate in the Probate Court of Lake County, makes no provision for C. F. Rieley, her surviving spouse, but leaves her entire estate to her two children.

"2. The value of the estate of Gertrude S. Rieley, deceased, as shown by the inventory and appraisal filed in the Probate Court of Lake County is $191,426.30.

"3. The estimated debts and costs of administration of the estate of Gertrude S. Rieley, deceased, are $7,854.14, as have been represented to him by the attorneys for said estate.

"4. The appraisers in the estate of Gertrude S. Rieley, deceased, set off to C. F. Rieley, as surviving spouse, the sum of $2,500.00 as his exempt estate.

"5. C. F. Rieley, the surviving spouse of Gertrude S. Rieley, deceased, is 92 years of age, an incompetent person and under the guardianship of The National City Bank of Cleveland by virtue of an appointment by the Probate Court of Cuyahoga County.

"6. That the guardianship estate of C. F. Rieley amounts to approximately $745,000.00 and that there is adequate income from the guardianship estate and the Corrigan Trust, of which C. F. Rieley is a beneficiary to provide for all of his needs and care. (See letter from The National City Bank of Cleveland attached hereto and marked Exhibit 1.)

"7. That the wills of Gertrude S. Rieley and C. F. Rieley

were made in pursuance of a plan to minimize estate and inheritance taxes for the maximum benefit of their joint estates passing to their two children, and that the bequest made by Gertrude S. Rieley, deceased, directly to her children, rather than to her husband, C. F. Rieley, was made to minimize the impact of federal estate taxes upon their joint estates. (See Affidavit of C. F. Taplin attached hereto marked Exhibit 2.)''

Exhibit 1, being a letter from the National City Bank of Cleveland, discloses that the guardianship has an annual income of $18,750.00 from guardianship assets, anticipated income of $3500.00 per year from another source and an income from the Corrigan Trust of $85,000.00 per year, the latter being substantially tax free.

Exhibit 2 is an affidavit of Mr. C. F. Taplin, who states that he has been attorney for Mr. and Mrs. Rieley for many years; that he drew their wills in 1949; that they were drawn pursuant to the wishes of each and with knowledge of each and that in his opinion, if Mr. Rieley were able to exercise judgment today he would desire that the will as drawn be carried out.

Under this set of facts the Probate Court is required to ''determine whether the provision made by the testator for the surviving spouse in the will or the provisions under Sections 2105.01 to 2105.21, inclusive, Revised Code, *is better for* such spouse and shall elect accordingly.''

In making this election the court is faced with two diametrically opposed theories as set forth in the opinions reported both in Ohio and by the courts of other states. One line of cases holds that the decision must be based solely on which choice brings the most money into the estate of the incompetent survivor. The opposing line assumes that the Court will put himself in the place of the surviving spouse, and, based on the knowledge the court has of the facts, make the choice which the surviving spouse would have made. The issue is presented clearly in this case. Must the Court elect to take under the law simply because such an election would bring approximately $60,000.00 into the guardianship or may the Court try to place himself in the position of the incompetent surviving spouse and attempt to make the choice he would make, if competent?

The case, *In re; Estate of Callan: Callan* v. *Olson, Gdn.*, 101 Ohio App., 114; 1 Ohio Opinion (2d), 64, indicates that the sole consideration must be the amount of money the election brings into the guardianship. Here the testator and his wife had executed wills at the same time, pursuant to a family plan; the surviving spouse had an estate of her own which produced an income of about $10,000.00 per year; the husband's will provided for a trust of his entire estate, the income to be used for her benefit amounting to about $22,000.00 per year and giving her unlimited right to invade the principal if needed. In addition, the election to take under the law resulted in throwing principal from his estate into her estate so that her heirs would benefit at the expense of his heirs even though he had made provision in his will for her heirs. The majority of the Court of Appeals for Cuyahoga County refused to say that this constituted an abuse of discretion by the Probate Judge although Judge Skeel of that court wrote a very strong dissenting opinion.

In the case *In re Estate of Elbert C. Morton,* 6 Ohio Opinions, 343, Judge McClelland, then the Judge of the Probate Court of Franklin County held as follows:

"Syl. 6. In making the election the court may elect to take under the will as being 'better' for such spouse, it not being required that the court elect that which is merely more valuable."

Mr. Morton had given his wife $133,000.00 as gifts over a number of years and had an insurance policy in her favor of $12,000.00. In his will he left her nothing but gave all but $1,000.00 to their daughter. If the widow took under the law, she would receive approximately $50,000.00. The Court in his Opinion reviews the leading cases on both sides of the question and arrives at the conclusion that the Court should put itself in the place of the surviving spouse and that the Court may take into consideration the equities of the matter and not be bound by the strict provisions of the statute. (p. 347.)

In addition to the cases reviewed by the Court in the *Morton case,* numerous other cases may be found in 74 A. L. R. and 147 A. L. R., 336. A leading case cited is that of *Van Steenwyck* v. *Washburn,* 59 Wis., 483; 17 N. W., 289, in which the Court said:

"Defeating a Will in any substantial provision is much like breaking it. It is defeating it pro tanto. The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy - - -. It seems to us these considerations are entitled to some weight in making the election in this case. - - - But if the Court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion. But we think it is the clear duty of the court to exercise sound discretion in the matter—to consider everything having a legitimate bearing on the election made."

The above Opinion and that of Judge McClelland expresses the views of the Court in the present case and he will examine the facts herein to determine what "is better" for the surviving widower.

The widower's personal income is close to $100,000.00 per year and far exceeds any reasonable expenditure which could be made for his comfort and care.

During his lifetime and while in full possession of his faculties, he and his wife had wills drawn by their attorney in which they carried out the desires of each and which were concurred in by the other.

And finally there is one factor which has not been mentioned in any of the opinions found by the court and which the court believes is entitled to consideration. It is certainly common knowledge that in recent years, wills are drawn and trusts established by people of some wealth for the legitimate purpose of minimizing the impact of estate and inheritance taxes. Can anyone doubt that it was desired by Mr. Rieley who had an estate of $745,000.00 of his own, plus an income of $85,000.00 per year from a trust, that the impact of taxation on his estate be minimized by planning with his wife the disposition of her property so that it would go direct to their children instead of being subjected to double taxation by going through his estate, if his wife should predecease him?

In the opinion of the Court, what is best for Mr. Rieley is to carry out the plan made by himself and his wife as to the disposition of her property and not make an election for him which would violate what any person of common sense and sound mind and judgment would do under the same circumstances.

It is the opinion of the Court that under the facts in this case it is "better for" Charles F. Rieley, incompetent surviving spouse of the deceased Gertrude S. Rieley, to permit the assets in Mrs. Rieley's estate to pass directly to her legatees and devisees under the provisions of her will than to elect that the widower take under the law of descent and distribution. The Court elects that he shall abide by the terms of said Will and will enter an order accordingly.