IN RE ESTATE OF STRAUCH.

(No. 8536—Decided August 15, 1967.)

174

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Colborn M. Addison* and *Mr. Roger A. Yurchuck,* for appellant Alice J. Strauch.

*Messrs. White, Rankin, Pfefferle, Patterson & Herron,* for executor Clyde F. Vorhees.

*Messrs. Means, Bichimer & Burkholder,* for exceptors-legatees Gertrude Reemsnyder, Calvin Greter, Lydia E. Strauch and Bernice Strauch.

*Messrs. Bricker, Evatt, Barton & Eckler, Mr. Dennis D. Grant* and *Mr. William H. Leighner,* for legatee Methodist Theological School.

DUFFEY, P. J.  This is an appeal from an order of the Probate Court of Franklin County making an election for an incompetent surviving spouse under the provisions of Section 2107.45, Revised Code.  The appellant is the guardian of Alice J. Strauch.

The will of John Henry Strauch, deceased, was admitted to probate, and on August 4, 1965, the executor was appointed. On September 3, 1965, an application for and entry appointing a commissioner were filed pursuant to Section 2107.45, Revised Code.  On September 28, 1965, the commissioner's return reported that the value of the surviving spouse's rights under the will was $8,820.50, and the value of her rights under the statute and against the will was $44,102.50.  On September 28, 1965, the then Probate Judge filed an entry entering an election for the spouse to take against the will and under the provisions of the law.

On November 18, 1965, legatees under the will of John Henry Strauch filed a "Motion for Reconsideration" of the election, complaining that it had been "ex parte."  A flurry of offsetting entries were filed over the succeeding several weeks, culminating in an entry on December 17, 1965, vacating the election.  On August 24, 1966, the successor judge filed an entry making a new election on behalf of the incompetent spouse, finding it "better" for her to take under the will, and so electing.

Appellant contends that (1) the legatees have no standing to challenge the election, (2) the election is not revocable and could not be vacated, and (3) the election to take under the will is an abuse of discretion.

The legatees have no legal interest in or right to contest an election of a surviving spouse made under Section 2107.45, Revised Code. See *In re Estate of Callan* (1956), 101 Ohio App. 114. They are not properly appellees in this court and should not have been listed in the caption. However, the legatees are not the appellant. If the Probate Court here had the authority to vacate the first order of election, the fact that the inducement to do so came from third persons cannot help the appellant.

In our opinion, an order making an election under Section 2107.45, Revised Code, is subject to the same control by the Probate Court as are other orders of the court. Such an order is a judicial act and appealable. *In re Estate of Knofler* (1943), 73 Ohio App. 383, affirmed 143 Ohio St. 294. Under Section 2101.33, Revised Code, the Probate Court has authority to vacate or modify its orders. See *In re Estate of Gray* (1954), 162 Ohio St. 384. Term time is established by the statute. The entry vacating the first order of election was made within term. The election entered on August 24, 1966, is more than nine months after the appointment of the fiduciary. Section 2107.39, Revised Code. However, Section 2107.45, Revised Code, only requires the appointment of the commissioner be within that time period and does not set the period within which the court must act on the commissioner's report. The appointment here was timely.

The Probate Court had authority to vacate the entry of September 28, 1965, and to make an election as of August 24, 1966.

In our opinion, the election to take under the will was an abuse of discretion and must be reversed.

Section 2107.45, Revised Code, provides:

"When, because of a legal disability, a surviving spouse is unable to make an election as provided by Section 2107.39 of the Revised Code, as soon as the facts come to the knowledge of the Probate Court, the Probate Court shall appoint some suitable person to ascertain the value of the provision made for such spouse by the testator and the value of the rights in the estate of such testator under Sections 2105.01 to 2105.21, inclusive, of the Revised Code. Such appointment by the court shall be made at any time within the time allowed for election under Section 2107.39 of the Revised Code.

"When the person appointed returns the report of his investigation, the court shall determine whether *the provision* made by the testator for the surviving spouse *in the will* or the provision under Sections 2105.01 to 2105.21, inclusive, of the Revised Code, is better *for such spouse* and shall elect accordingly. The court shall thereupon record upon its journal the election made for such spouse, which election, when so entered, shall have the same effect as an election made by one not under such disability." (Emphasis added.)

Under the statutes, the Probate Court is to determine which is better as between the provision "in the will" and the provision under the statutes. That statutory limitation precludes consideration of provisions by the decedent or others *outside* the will. Further, the court is to determine only what is better "for the surviving spouse." Under that limitation, the court cannot consider the effect of the election upon legatees, heirs, next of kin or the tax collector. The question is what is better for the spouse.

In this case, the will provision is a simple bequest of "10% of my net estate." The court commissioner found this to be $8,820.50. The widow's rights under the statutes would provide her with 50% of the net estate, or $44,102.50. See Sections 2107.39 and 2105.06 (D), Revised Code. Obviously, the latter is better for the widow.

In the recodification of the Probate Code of Ohio in 1931, the predecessor of the present Section 2107.45, Revised Code, was amended to eliminate the requirement of determining which option was "more valuable and better." We would agree that the provision of a will might be "better," without necessarily being more "valuable" in a monetary sense, *i. e.,* cash value. An example of this is the case of *In re Estate of Callan* (1956), 101 Ohio App. 114.

In the *Callan case*, the widow's statutory rights amounted to approximately $267,736. The decedent's will established a testamentary trust. While the vested or cash interest of the widow under the trust was only $83,900, the trustee had the power to invade the corpus, at his discretion, for her care and support. The corpus would have been approximately $500,000. Thus, the Probate Court there faced the difficult problem of a will which provided care and support, but which could not be

readily evaluated in terms of money. The court elected against the will—choosing the more sure in preference to the less certain, although possibly greater benefits.

In upholding the election of the Probate Court, it is important to note that the appellate court was faced with the issue of whether the election against the will was an abuse of discretion. The opinion does not intimate that the Probate Judge could not have reached the opposite conclusion. Indeed, the dissenting judge argues that he was required to do so.

*Callan* is an example of a provision which could be "better," even though the statutory rights are of greater immediate cash or "market" value. A testator and his attorney may design an infinite variety of provisions which require discretionary judgments in a determination of which is better. However, no such problems arose in this case.

In this case, the provision in the will is simple and cleancut—10 per cent. The statutory right is equally simple and cleancut—50 per cent. The difference is $35,282. There is no other provision for the widow *in the will*. Choosing between these two provisions, and considering only the widow's interest, the only conclusion permissible is that the latter is better.

In determining that it was "better for such spouse" to take the lesser amount, the Probate Court relied upon factors *outside* the will provision. The two which were especially emphasized were the widow's financial needs and her probable intent to agree with her husband's desires regardless of personal gain or loss.

The court reviewed the relative amount of her personal assets ($153,000), her age (86), life expectancy (5 years), and the expense of her care (presently about $5,820 per year). From these factors the court concluded that the widow did not need the additional $35,282 for her care and support.

The court also reviewed the tax consequences. It found that the maximum difference in tax liability regardless of which election was made was only about $200. However, the court went on to point out that upon the widow's eventual death the tax under her will would reduce the net gain to her legatees from the $44,102.50 to a net of about $26,500. While the court recognized that the election was for the benefit of

the widow only, and not the legatees of the husband, it felt the tax consequences were significant in showing an "estate plan."

The court also emphasized that both the decedent and his widow had their wills prepared by the same attorney, both left the other 10 per cent and bequeathed most of their estate to their respective relatives, and both executed their wills in the attorney's office some nine years earlier (March 26, 1958). The court further noted that each owned assets of about equal value until the decedent made a substantial gift of stock a few days before his death. (The gift is apparently contested.) From testimony of the decedent's legatees, the court also found that the decedent and his wife had "enjoyed a warm and friendly relationship" with the legatees.

Having found no need for the greater amount and having further found a "common plan of property settlement" by the decedent and the widow, the court found that an election against the will would destroy that plan. It thus held that "Under such circumstances, it is better for the spouse to honor her husband by not thwarting his testatmentary plans for distribution of his assets."

In giving consideration to the surviving spouse's need, probable intent to honor the testator's intent, and the existence of a plan of disposition, the Probate Court followed the lead provided by *In re Estate of Rieley* (1963), 92 Ohio Law Abs. 296. Perhaps the Legislature should permit the application of such standards, at least in the case of very wealthy people. See 13 W. R. L. 698. However, we are unable to justify the use of considerations of this type under the wording of the present statute, Section 2107.45, Revised Code.

It may be well to note that the widow's rights are as ancient as the husband's right to dispose of his property, and have always received particular protection by both the Legislature and the courts. It is not true historically to suggest that the husband's testamentary plans have ever been superior to or deserving of greater honor than the widow's rights to take against the will. Estate planning can take the surviving spouse's rights into account, and great leeway is provided under Ohio law to dispose of property prior to death.

A competent surviving spouse may elect as she wishes. The Probate Court must elect for an incompetent on the basis of what is better for that incompetent.

The order of the Probate Court will be reversed and the cause remanded with instructions to enter an election for the surviving spouse to take against the will and under the statutes.

*Judgment reversed.*

TROOP and DUFFY, JJ., concur.